[No. 2,468.]

## JO. GORDON *v.* GEORGE W. SWAN AND H. M. KOLLOCK.

CONTRACT WITH STOCKHOLDERS OF A CORPORATION.—A contract made by the stockholders of a mining corporation as parties of the first part, with parties of the second part, by which the stockholders agree to assign their stock to trustees, to be by the trustees conveyed to the parties of the second part, upon the payment by them of a certain sum of money to the parties of the first part, through the trustees, accompanied by a resolution of the Board of Directors of the corporation authorizing their President to convey the mine to the parties of the second part, upon the payment of the money, is substantially as if the contract had been made with the corporation instead of the stockholders.

CONDITIONAL CONTRACT TO BUY A MINE.—A contract with the owners of the stock of a mining corporation, as parties of the first part, reciting that the parties of the second part are desirous of buying the stock and mine, if the tests they make prove satisfactory, and shall take possession of the mine, and make improvements on it, and that the stockholders shall assign the stock to trustees, and that the parties of the second part shall pay at a time fixed a certain sum to the trustees for the stockholders and have the stock, but forfeit their improvements and redeliver possession if they fail to pay, accompanied by a resolution of the Board of Directors to convey the mine to the parties of the second part if the payment is made, merely gives the parties of the second part the option of purchasing, and by their failure to pay they lose the privilege of buying, but do not become liable for the amount they were to pay.

APPEAL from the District Court of the Fourth Judicial District, City and County of San Francisco.

The stock of the corporation was divided into one thousand shares, of which M. G. Griffith and W. N. Muffley, the assignors of the plaintiff, owned ninety-one and two thirds shares. Stockholders owning about nine hundred and sixty shares signed the contract. The resolution of the Board of Directors authorized the President and Secretary of the mine to deliver possession of the same, and to execute a deed thereof to the defendants. The Court below sustained the demurrer to the complaint, and final judgment was rendered for the defendants, and the plaintiff appealed.

The other facts are stated in the opinion.

*C. A. Tuttle*, for Appellant.

*W. H. L. Barnes*, for Respondents.

By the Court, NILES, J.:

The plaintiff sues as the assignee of Griffith & Muffley of their interest in a contract made between them and a number of other persons, stockholders of the "Cosumnes Copper Mining Company," of the one part, and the defendants of the other part. The complaint sets forth the contract

in *hæc verba,* and the sufficiency of the complaint must be determined by an inspection of the instrument.

The contract recited that the corporation was the owner of a vein of copper ore; that the parties of the first part were stockholders in the corporation and desirous of selling their respective shares; that the parties of the second part (defendants) were "desirous of making certain improvements on the said mine, and erecting smelting works for the purpose of reducing the ores of said mine, and of eventually making a purchase of the shares of stock of the parties of the first part and of the mine, if the tests which they shall cause to be made prove satisfactory."

The stockholders, upon their part, agreed that they would assign their stock to John Sime & Co., to be held by that firm "in trust, to reassign and return the same to the parties of the first part if the parties of the second part fail to perform their part of this agreement; and if the parties of the second part fulfill their part of this agreement, and pay the money agreed to be paid, then to assign and deliver said certificates of stock to the parties of the second part," etc.

The defendants, upon their part, agreed to immediately construct a road to the mine, and within a specified time erect a furnace and smelting works for the reduction of the ores.

They further agreed "to pay" * * * "to the parties of the first part, by paying the same to the said trustees for them, the sum of fifty thousand dollars at the end of six months from the time this agreement is signed and possession of the mine taken;" and, in similar terms, agreed to make two further payments of fifty thousand dollars each, at intervals of six months.

It was then provided that "if the parties of the second part fail to fulfill any of the agreements herein contained to be by them performed, they shall forfeit whatever improvements they may have made in and about the mine, and all

moneys paid in accordance with this agreement, and all machinery connected therewith (except the said furnace and machinery connected therewith, and tools.)"

And in case of such failure the parties of the first part were "to take peaceable possession of said mine and all improvements, except as reserved, without any recourse at law."

A resolution of the Board of Directors of the corporation, which was also set forth in the complaint, authorized the delivery of possession of the property to the defendants, and a conveyance to them, when they should have fulfilled their contract with the stockholders, and should surrender up the stock held by Sime & Co. in trust.

Immediately after the execution of the contract, the stockholders transferred their stock to Sime & Co., and the defendants entered into possession of the mine, and erected a portion of the works required for testing the ore; but they failed to pay the first installment of fifty thousand dollars. Plaintiff sues to recover the proportion of this sum alleged to be due to him as assignee of Griffith & Muffley.

The defendants demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action.

In construing the contract, the first question naturally presented is, what was the consideration for the defendants' agreement to pay the sum of one hundred and fifty thousand dollars? The fifth clause of the contract which contains the agreement to pay, does not specify any consideration for the payment; and, as a consideration is needed to uphold the promise, we must look for it without the clause which contains the promise only.

We think it is very evident that this amount was to form the consideration for the purchase of the stock, which, if purchased, would, by the action of the Board of Directors, result in a conveyance of the mine to the defendants. It

was a device by which the defendants could acquire the title to the mine, and the stockholders could receive their several proportions of the purchase money directly, and without the trouble and delay of the proceedings for its distribution which the statute would otherwise require.

It cannot be claimed that it was the true import of the contract that this large sum of money was to be paid for a brief possession of the mine, or for the privilege of erecting furnaces and testing the value of the ore. It was intended as the purchase money of the property itself, and it is substantially as if the contract had been made with the corporation instead of the stockholders.

The contract contains no obligation on the part of the defendants to purchase the stock. On the contrary, it seems to be clear, from the terms of the instrument, that the purchase should be at defendants' option. It recites that the defendants are desirous " of eventually making a purchase of the shares of stock    *    *    *    and of the mine, *if the tests which they shall cause to be made prove satisfactory.*" The trustees were to assign the stock to the defendants if they performed their part of the agreement—otherwise, to reassign it to the stockholders. The contract provided for a peaceable repossession of the mine by the stockholders in case of defendants failure to perform, and a forfeiture of all moneys paid or improvements made by them. It was one of a class of contracts, common among miners, by which the mine owner gives to another person the privilege of prospecting the mine for a certain time, and the option of purchasing at a fixed price, or perfecting the improvements made by him. The defendants, by their failure to pay the first installment of the purchase money, exercised their choice, and so lost the privilege of purchase, and forfeited their improvements; but did not become liable for the amount, which, by a reasonable construction of the instru-

ment, they were to pay only in the event of their election to consummate the purchase and receive the title to the mine.

Judgment affirmed.