[Civ. No. 5046.  Second Appellate District, Division Two.—March 20, 1928.]

OLOF JOHNSON, Respondent, v. BOADWAY BROTHERS (a Corporation), Appellant.

Paul S. Honberger and Lewis C. Preston for Appellant.

G. R. Dexter and Howard B. Henshey for Respondent.

STEPHENS, J., *pro tem.*—This is an action wherein the plaintiff asks a judgment in rescission of a certain stock subscription payment contract and for the return of $5,000 paid thereon. Judgment went for plaintiff as prayed and defendant appeals upon a bill of exceptions and upon the judgment-roll.

There is little conflict between the parties in the evidence. Defendant was a corporation engaged in the department store business in Pasadena. In the summer of 1922 it sold its own preferred stock for the announced purpose of securing a lease on designated property in Hollywood, a district within the corporate limits of Los Angeles, and to procure the erection and equipment of a suitable building upon the leased ground for the establishment therein of a department

store. Such a lease was executed August 7, 1922. Prior to the actual execution of the lease a stock-selling campaign was conducted in Hollywood, with Mr. O. E. Boadway, vice-president of the defendant corporation, in active charge, and a number of business men of Hollywood, one of them Mr. B. Y. Taft, being very active. The plan was publicly and directly to plaintiff announced, that the enterprise would enhance the value of property in the vicinity of the store. Plaintiff owned property on Hollywood Boulevard near by, and believing this new business would increase the value of his holding he subscribed in the sum of $5,000. This sum was put in escrow, and later, after the escrow had been declared off, he was requested to release the money, but he would not do it until after being shown an instrument dated August 31, 1922, wherein it was recited, under "whereas" clauses, that $50,000 provided for by the contemplated lease had not been deposited in escrow; that pending same the lease had been withheld by lessor; that a bond had been executed to lessor in lieu of deposit; that therefore the lease would be retained by the lessor to be delivered and become effective when *bona fide* subscriptions equal to $200,000 at par had been received and had been approved by the lessor, the lessor retaining the option to deliver the lease at any time under any condition of subscription; that if within 30 days thereafter such subscriptions had not been obtained and paid for in cash lessor reserved the right to terminate the agreement and lease. The instrument also contained the following: ". . . said corporation undertakes and agrees to give all of said 'Hollywood subscribers' . . . the right and option to rescind the subscription of each subscriber within 30 days after the termination of this agreement and the cancellation of said lease, and to receive back upon such conditions everything of value paid or turned over to said corporation, together with all evidences of indebtedness given to said corporation." Thereafter on the fourteenth day of February, 1923, plaintiff served his notice of rescission and on February 20th brought this action. There is evidence to the effect that Boadway told plaintiff that the business would be established by Christmas, 1922; that Taft represented to plaintiff that Mr. Greenwood, a local banker, had agreed to take $1,000 of the stock. There were also other representations as

to the stability of Boadway Brothers. At the time of the commencement of the action (and not since) no building had been commenced. All of the money subscribed, including plaintiff's subscription, went into the general fund of defendant corporation and was used in the general conduct of its business in Pasadena, Long Beach, and San Diego.

A meeting was held in Mr. Taft's office in January, 1923, concerning which plaintiff testified: "I had definite information at the mass meeting in January, 1923, that the defendant did not intend to establish and equip and maintain a store on that particular corner." A receiver in bankruptcy was in charge of defendant's business from November, 1922, to February 3, 1923. They were never adjudged bankrupt. On February 3, 1923, there was a change in the personnel of defendant's officers. The corporation became the Tooker-Jordan Co. A statement of condition of the business as of February 3, 1923, was introduced in connection with Mr. Jordan's (the new vice-president) testimony that the business was in a good condition. The lease herein referred to was rescinded July 20, 1923.

The first point urged by appellant was under the subhead: "No damage or injury is alleged or shown." Plaintiff purchased the stock upon condition that a building would be erected at a certain place and a department store opened therein. The evidence is strongly convincing that this was the controlling motive and condition of plaintiff's investment. There was evidence to support the finding that this consideration failed. Mr. Justice Shaw, in *Withers* v. *Moore,* 140 Cal. 591, at page 600 [74 Pac. 159, 162], quoted from page 399 of Anson on Contracts with approval, as follows: "The difficulty which has always arisen, and must needs continue to arise with regard to conditions precedent, consists in discovering whether or not the parties to a contract regarded the particular term as essential. If they did, the term is a condition; its failure discharges the contract." See, also, *Fountain* v. *Semi-Tropic L. & W. Co.,* 99 Cal. 677 [34 Pac. 497]. It seems to us that the allegations of the complaint are sufficient and the proof ample upon which to base a finding that the establishment of the store was the controlling condition of the contract and the failure to establish the same was a substantial injury.

■ The second point urged by appellant was under the subhead: "No valid tender of stock." The point made here is that the stock when tendered was not indorsed. The stock, just as it had been received by him, was tendered by plaintiff with the notice of rescission, which stated that plaintiff would indorse it if desired. Subdivision 2 of secton 1691 of the Civil Code is as follows: "He [the party rescinding] must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so." The evidence shows that by a written instrument the tender was to restore the stock precisely as plaintiff had received it, and that if this were not sufficient he would upon request indorse it over. An offer in writing to deliver a written instrument, if not accepted, is equivalent to actual production. (Code Civ. Proc., sec. 2074.) Here an offer was made of the stock as received as well as to deliver indorsed if desired, but neither was accepted. ■ There was no specification as to why the tender was refused (sec. 2076, Code Civ. Proc.), and this is but another reason why the tender as made cannot now be successfully claimed as invalid.

■ The third point urged by appellant was under the subhead: "Defendant's motion for nonsuit should have been granted." It is true that the trial court was abrupt in its ruling on the motion for nonsuit and should have permitted counsel to fully state the grounds of the motion whether or not it desired to hear argument. However, we believe there was sufficient evidence before the court to require a response by evidence from the defendant, and we do not believe there was any ground upon which the court could have ordered a nonsuit. It appears from the evidence that a large sum of money was subscribed for the purpose of leasing land and erecting a building for the purpose of conducting thereon and therein a department store. That the land leased was of no importance. Even if a building had been erected, that would perhaps have been of no importance, except that both of these were necessary for the important thing—the establishment and maintenance of a department store. This was not done. Instead, the funds

were commingled with the business already being conducted in other cities by defendant. The company later went into the hands of a receiver and it later changed management and name. The affairs of the company, by the statement in evidence as of February 3, 1923, did not reveal a cash on hand account equal to the establishment of the enterprise. In fact, it revealed but $1,249.15 in cash. This, in connection with the other facts as hereinbefore stated—which, of course, appears more in detail in the record—was substantial evidence for the court to deny the nonsuit and upon which to predicate fraud, as was done in the findings.

The fourth point urged by appellant was under the subhead: "The action was premature." The enterprise was to have gone on with rapidity. It was represented that it was to be in operation by Christmas. Instead, the vicissitudes related under the last-treated subhead were known by plaintiff. It appears to us that not only was plaintiff not premature in his action, but had he delayed he would have been in grave danger of legally waiving any objection to his investment being used in the general conduct of the business instead of for the real purpose—the establishment of a business in Hollywood. Section 1691 of the Civil Code reads, in part: "Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules: (1) He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind . . . "

The fifth point urged by appellant was under the subhead: "Findings of fact not supported by the evidence." We have expressed ourselves sufficiently on this point under the other points already treated. We think the complaint was sufficient and that the evidence supports the findings of fact and the judgment.

We do not attach the same importance to the agreement of August 31, 1922, as does the appellant. It was entered into by Edward O. Palmer, one of the lessees, and Boadway Brothers and without the knowledge of plaintiff until after its execution. It could not bind plaintiff, although we do not think it would have changed matters had he signed it.

266

Its importance is that it reasserts that one of the conditions in the inducement to buy the stock was the establishment of a business as hereinbefore related.

Judgment affirmed.

Works, P. J., and Craig, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 17, 1928.

All the Justices concurred.