[L. A. No. 14775. In Bank.—January 28, 1936.]

A. G. BROWN, Appellant, v. JAMES M. FERDON et al., Respondents.

Louis Ferrari, Edmund Nelson, Howard Waterman, Freston & Files, Ralph E. Lewis, O'Melveny, Tuller & Myers and Louis W. Myers for Appellant.

Fitzgerald, Abbott & Beardsley, as *Amici Curiae* on Behalf of Appellant.

Frank P. Doherty, William R. Gallagher, W. C. Shelton, George W. Burch, Jr., Halbert & Stone, Sherrill Halbert, L. H. Cahill and James McKnight for Respondents.

White, Miller, Meahan, Harbin & Mering, as *Amici Curiae* on Behalf of Respondents.

WASTE, C. J.—This cause was taken over after decision in the District Court of Appeal, Second Appellate District, Division One, not because of any dissatisfaction with the opinion therein prepared by Mr. Justice Edmonds, sitting *pro tempore,* but in order to permit this court to more fully

consider the important question of law involved. Following examination of the record and the pertinent authorities, we are of the view that the opinion above referred to correctly disposes of the issue presented and we therefore adopt it as and for the decision of this court. It reads:

"This action was brought to recover the deficiency remaining unpaid upon a note originally secured by a deed of trust after sale of the property thereunder upon default in payment. The note and deed of trust were executed in 1930, and the sale was made after the effective date of section 2924½ of the Civil Code, passed in 1933, which provides: 'No judgment shall be rendered for the balance due upon any obligation which was secured by a deed of trust or mortgage with power of sale upon real property following the exercise of such power of sale, if exercised at any time between the effective date of this act and September 1, 1935, unless it shall affirmatively appear that the notice of breach and election to sell provided for in section 2924 of the Civil Code, pursuant to which such sale was held, was recorded at least one year before the date of such sale.' The trial court granted the defendants' motion for judgment on the pleadings, and the sole question presented on appeal is the constitutionality of the quoted law as applying to instruments executed before its effective date.

"If the law is to be applied retroactively, then the payee of a trust deed note must either waive his right to a deficiency judgment against the maker, or he must wait nine months longer than he was formerly required to do before the trustee may sell the property to satisfy the debt. It is contended by the appellant that if this law so applies, it impairs the obligation of contract within the meaning of the federal and state constitutional provisions prohibiting such legislation. The contrary view urged by the respondents is that the law is emergency legislation justified by the economic situation through which the country has passed, and that its constitutionality is sustainable upon the authority of *Home Building & Loan Association* v. *Blaisdell*, 290 U. S. 398 [54 Sup. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481], in which case the Supreme Court of the United States upheld the Minnesota moratorium law.

"While the law here challenged makes no reference to the necessity for its passage, in view of the fact that it is

effective by its terms 'to and until September 1, 1936', we may take judicial notice of the economic difficulties of the times and hold it to be emergency legislation. ▆ However, while economic necessity may furnish the reason for the passage of a law by the legislature, that necessity will not place it beyond the reach of the constitutional guaranties concerning the obligations of contract.

▆ "As was pointed out by Chief Justice Hughes in the Blaisdell case *supra:* 'The obligations of a contract are impaired by a law which renders them invalid, or releases or extinguishes them (*Sturges* v. *Crowninshield, supra,* 4 Wheat. 122, 197, 198 [4 L. Ed. 549]), and impairment, as above noted, has been predicated of laws which without destroying contracts derogate from substantial contractual rights.' He also said (pp. 429, 430): 'The obligation of a contract is "the law which binds the parties to perform their agreement". (*Sturges* v. *Crowninshield,* 4 Wheat. 122, 197 [4 L. Ed. 529, 549]; Story, op. cit., sec. 1378.) This court has said that "the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge and enforcement. . . . Nothing can be more material to the obligation than the means of enforcement. . . . The ideas of validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed by the Constitution against invasion." (*Von Hoffman* v. *City of Quincy,* 4 Wall. 535, 550, 552 [18 L. Ed. 403, 408, 409]. See, also, *Walker* v. *Whitehead,* 16 Wall. 314, 317 [21 L. Ed. 357, 358].) But this broad language cannot be taken without qualification. Chief Justice Marshall pointed out the distinction between obligation and remedy. (*Sturges* v. *Crowninshield, supra,* 4 Wheat. 200 [4 L. Ed. 529, 550].) Said he: "The distinction between the obligation of a contract, and the remedy given by the legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct." And in *Von Hoffman* v. *City of Quincy, supra,* 4 Wall. 553, 554, 18 L. Ed. 409, 410, the general statement above quoted was limited by the further observation that "It

is competent for the States to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired''.'

██ "Under the law existing at the time the note here sued upon was made, upon default the creditor could require the trustee to sell the property in satisfaction of the debt after three months' notice. He might then sue the maker of the note and obtain judgment for any deficiency remaining after crediting the proceeds of the sale upon the indebtedness. If the note comes within the provisions of the new law, the right to a deficiency judgment has either been entirely taken away from the creditor, or he must wait an additional period of nine months before he may have judgment. These are substantial rights which are either entirely abrogated or suspended, and the fact that this is accomplished by legislation which has to do with the remedy rather than the substance of the contract is not controlling.

" 'It is settled that all the laws of a state existing at the time a contract is made which affect the rights of the parties to the contract enter into and become a part of it, and are as obligatory upon all courts which assume to give a remedy on such contracts as if they were referred to or incorporated in the terms of the contract. (*Von Hoffman* v. *City of Quincy*, 4 Wall. 535, 550 [18 L. Ed. 403] ; *Brine* v. *Hartford Fire Ins. Co.*, 96 U. S. 627 [24 L. Ed. 858].) ██ The remedy, where it affects substantial rights, is included in the term "obligation of contract", and the remedy cannot be altered so as to materially impair such obligations. (*Green* v. *Biddle*, 8 Wheat. 1, 75 [5 L. Ed. 547] ; *Edwards* v. *Kearzey*, 96 U. S. 595, 600 [24 L. Ed. 793].) In the latter case it is said "The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be, and falls into the class of those imperfect obligations, as they are termed which depend for their fulfillment upon the will and conscience of those upon whom they rest." . . . In the late case of *Barnitz* v. *Beverly*, 163 U. S. 118 [16 Sup. Ct. 1042, 41 L. Ed. 93], the principle is fully discussed, and it is held that a statute which authorized the redemption of property sold upon foreclosure of a mortgage, where no right of redemption previously existed, or

which *extends the period of redemption beyond the time for-merly allowed,* cannot constitutionally apply to a sale under a mortgage executed before its passage. The court, after citing many cases, said: "It seems impossible to resist the conclusion that such a change in the law is not merely the substitution of one remedy for another, but is a substantial impairment of the rights of the mortgagee as expressed in the contract." ' (*Welsh* v. *Cross,* 146 Cal. 621, 624, 628 [81 Pac. 229, 106 Am. St. Rep. 63, 2 Ann. Cas. 796].)

"For these reasons the right of the creditor to proceed against his debtor where the security is inadequate cannot be taken from him without providing some equally effective remedy or imposing reasonable conditions for the extension of time given. ██ The act in question does not attempt to provide any substitute for the existing right. It either takes away the right to bring the action to judgment, or post-pones that right for nine months. It is not, therefore, a stat-ute of limitation, which fixes the latest time within which an action may be brought, and the law governing such statutes does not apply. And its provisions are substantially differ-ent in principle from those of the Minnesota mortgage mora-torium law.

"The extension of time authorized under the Minnesota law does not automatically run in favor of every debtor, but may only be had upon conditions fixed by a court after judi-cial ascertainment of what is fair to both debtor and creditor under the conditions existing in each case and only where the debtor pays the rental value of the property as fixed by the court upon notice and hearing. The amount so paid is appli-cable to taxes and insurance, as well as interest upon the indebtedness. Also, the extended period allowed for redemp-tion of the property may be changed by the court as circum-stances change. In considering the constitutional basis for this law, the Supreme Court said in the Blaisdell case (290 U. S. 398, 440) : 'Whatever doubt there may have been that the protective power of the State, its police power, may be exercised—without violating the true intent of the provision of the federal Constitution—in directly preventing the imme-diate and literal enforcement of contractual obligations by a temporary and conditional restraint, where vital public inter-ests would otherwise suffer, was removed by our decisions relating to the enforcement of provisions of leases during a

period of scarcity of housing. (*Block* v. *Hirsh*, 256 U. S. 135 [41 Sup. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165] ; *Marcus Brown Holding Co.* v. *Feldman*, 256 U. S. 170 [41 Sup. Ct. 465, 65 L. Ed. 877] ; *Edgar A. Levy Leasing Co.* v. *Siegel*, 258 U. S. 242 [42 Sup. Ct. 289, 66 L. Ed. 595].)'

"This 'temporary and conditional restraint', the court held, 'in order not to contravene the constitutional provision, could only be of a character appropriate to that emergency and could be granted only upon reasonable conditions'. Those conditions it found reasonable. 'Although the courts would have no authority to alter a statutory period of redemption, the legislation in question permits the courts to extend that period, within limits and upon equitable terms, thus providing a procedure and relief which are cognate to the historic exercise of the equitable jurisdiction. If it be determined, as it must be, that the contract clause is not an absolute and utterly unqualified restriction of the State's protective power, this legislation is clearly so reasonable as to be within the legislative competency.' (*Home Building & Loan Association* v. *Blaisdell, supra,* p. 447.)

"That the Minnesota law was sustained upon the sole ground that it extended the period of redemption upon reasonable conditions considerate of the rights of both debtor and creditor is evident from the later case of *Worthen* v. *Thomas*, 292 U. S. 426 [54 Sup. Ct. 816, 78 L. Ed. 1344, 1347, 93 A. L. R. 173], where the Blaisdell decision was commented upon, as follows: 'But we also held that this essential reserved power of the State must be construed in harmony with the fair intent of the constitutional limitation, and that this principle precluded a construction which would permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them. We held that when the exercise of the reserved power of the State, in order to meet public need because of a pressing public disaster, relates to the enforcement of existing contracts, that action must be limited by reasonable conditions appropriate to the emergency. This is but the application of the familiar principle that the relief afforded must have reasonable relation to the legitimate end to which the State is entitled to direct its legislation. Accordingly, in the Blaisdell case we sustained the Minnesota mortgage moratorium law in the light of the temporary and

conditional relief which the legislation granted. We found that relief to be reasonable, from the standpoint of both mortgagor and mortgagee, and to be limited to the exigency to which the legislation was addressed.' [To the same effect see *Worthen Co.* v. *Kavanaugh,* 295 U. S. 56 [55 Sup. Ct. 555, 79 L. Ed. 1298, 97 A. L. R. 905.]

''While the act here being considered is limited in time, it fixes no conditions whatever for its operation. It purports to give relief to every debtor, irrespective of the amount of the indebtedness, the condition of the security or his need for additional time. It imposes no condition upon the debtor in connection with the use and occupation of the property. It gives no opportunity for an inquiry into the situation of the respective parties and provides no forum for the creditor to present the situation from his standpoint. It simply gives a debtor a preference without any consideration of the rights of the creditor, and it cannot be sustained under our Con :titutions. `(Shouse* v. *Quinley,* 3 Cal. (2d) 357 [45 Pac. (2d) 701].) [See, also, *Islais Co.* v. *Matheson,* 3 Cal. (2d) 657 [45 Pac. (2d) 326.]

''In a very recent case, *Morris* v. *Pacific El. Ry. Co.,* 2 Cal. (2d) 764 [43 Pac. (2d) 276], the Supreme Court said that 'the legislature may not, under pretense of regulating procedure or rules of evidence, deprive a party of a substantive right, *such as a good cause of action* or an absolute or a substantial defense which existed theretofore (*Krause* v. *Rarity,* 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327]).' ''

██ As intimated above, the code section under consideration is general in its application and is not confined to purchase money obligations or to those involving homes or properties occupied by the debtor. On the contrary, it applies to all ordinary commercial transactions in which the debtor has borrowed money for purposes of his own and secured his promise to repay by trust deed upon real property. If retroactively applied, it clearly prefers the debtor over the creditor. Such preferment is not conditional, but absolute, and is accorded without regard to the actual needs or desires of the parties. It is granted without reference to individual circumstances, but as a matter of course in all cases, irrespective of and without examination into the equities of the situation. This is a far cry from the construction placed upon a proper exercise of the reserve power of the state by the opinions in the Blaisdell and Worthen cases, *supra.*

We fail to perceive wherein petitioners may gain any comfort from our recent decision in the case of *Lincoln* v. *Superior Court*, 2 Cal. (2d) 127 [39 Pac. (2d) 405], wherein we held that section 725a of the Code of Civil Procedure, permitting judicial foreclosure of trust deeds, may be applied retroactively to trust deeds executed prior to the enactment of the section. In so concluding, we held that the cited section "is a remedial statute which merely affords a new and additional means of enforcing a right". Our opinion in the cited case goes on to point out that under section 725a, *supra*, "The respective rights of the trustor and beneficiary are neither increased nor diminished by the section. It does not enlarge the obligation assumed by the trustor but only enables the trustee or beneficiary to compel the performance of that obligation. In other words, the right of the beneficiary to have the property sold in the event of default remains as at the time the contract was executed, while the right of the trustor to have the property reconveyed to him upon satisfying the debt obligation, to secure which the property was conveyed to the trustee, is in no way affected by the section. Without any further condition than that specified in the trust deed, viz., satisfaction of the debt obligation, the trustor has the right to have the property reconveyed to him."

In so concluding, we had definitely in mind that the remedy by way of judicial foreclosure, provided in section 725a, was to be employed at the election of the creditor or trustee and was merely cumulative of and in addition to the remedy by trustee's sale, without in any manner increasing the obligations or burdens of the debtor. As stated in the Lincoln case, it merely afforded "a new and additional means of enforcing a right . . . the right of the beneficiary to have the property sold in the event of default remains as at the time the contract was executed". ▮ In view of this, we cannot accept the contention that the alteration or impairment of a substantive right, which results from a retroactive application of section 2924½, is compensated for by the existence of a right to a deficiency judgment in the event of judicial foreclosure under section 725a, enacted at the same time. The effect of this contention, under the circumstances here involved, would be to substitute the remedy of judicial foreclosure for that of a trustee's sale. However, had a legislative attempt been made to substitute such remedy for the remedy by trustee's sale,

section 725a could not have been constitutionally applied retroactively for, contrary to the rule of the Blaisdell and Worthen cases, it would have unconditionally deprived the creditor of the substantive right, given him at the time of the execution of the trust deed, to procure an indefeasible title (*Bank of Italy Nat. T. & S. Assn.* v. *Bentley,* 217 Cal. 644, 655 [20 Pac. (2d) 940]), together with the right to a deficiency judgment, if necessary, at the expiration of three months from the recording of the notice of breach and election to sell. The remedy of judicial foreclosure, authorized by section 725a, with its accompanying period of redemption reserved to the debtor, would not give to the creditor at the expiration of three months an indefeasible legal title capable of immediate transfer. We cannot hold, therefore, that the latter remedy, with its provision for a deficiency judgment, is equally effective and no more burdensome than the creditor's original remedy by way of trustee's sale.

Thus the contention now under consideration, if accepted, would work a change in the substantive rights of the creditor under the guise of a change in remedy. That this cannot be done is recognized in the Lincoln case, *supra,* wherein we stated that "the existing remedy cannot be so altered as to take away or impair any of the rights given by the contract". Particularly is this so, when we keep in mind that section 725a apparently is a permanent addition to our law which was not enacted for a limited period in the exercise of the reserve power of the state, as that power is defined and limited in the Blaisdell and Worthen cases.

Section 2924½ of the Civil Code, involved in the present case, falls afoul of the rule last above referred to for, as already shown, if applied retroactively the effect is to unconditionally take away or impair the right to a deficiency judgment as the same existed at the time of the execution of the trust deed, irrespective of the equities or the situation of the parties.

The judgment is reversed.

Shenk, J., Curtis, J., Thompson, J., and Seawell, J., concurred.

Langdon, J., not having been present at the hearing of the argument, and Conrey, J., being disqualified, neither of them participated in deciding the cause.