[Civ. No. 14154.   First Dist., Div. One.   Feb. 8, 1950.]

EMERSON MURFEE, Respondent, v. A. L. PORTER et al., Appellants.

Norman S. Menifee and Henry F. Wrigley for Appellants.

Hugh F. Mullin, Jr., and John A. Cost for Respondent.

PETERS, P. J.—Murfee contracted with Doelger for the lease of a restaurant. The written lease gave Murfee an option to purchase the premises for $30,000, if such right were exercised at the end of the 30 months from the inception of the lease; otherwise, he was given the right to purchase for $35,000 during the next 30-month period. The first 30-month period expired on June 20, 1947. Prior to that date Murfee, through his agents, notified Doelger, or his agent, that he intended to exercise the option. Doelger, by his agent Porter, had deposited a deed in escrow on May 19, 1947. Various complications arose, hereafter discussed, and on June 24, 1947, Doelger demanded the return of his deed from the title company. On June 30, 1947, Doelger notified the title company that the deal should be closed only upon Murfee paying $35,-000, plus $469.40 for insurance paid for by Doelger. On July 25, 1947, Murfee paid $35,469.40, under protest, and then brought this action to recover $5,469.40, the claimed excess. The trial court determined that Murfee was not liable for the insurance premiums; that he had notified Doelger prior to June 20, 1947, that he intended to exercise the option, and that, under the terms of the agreement, the money did not have to be in escrow on that date but that Murfee had a reasonable time thereafter to make the payment. Judgment was granted for Murfee for $5,469.40, and Doelger and his agent appeal.

In their respective briefs both counsel purport to make a detailed statement of facts. Appellants have not supported their statement with a single transcript reference, the respondent with but one such reference. Rule 15a of the Rules on Appeal requires that: "The statement of any matter in the record shall be supported by appropriate reference to the record." Such failure to comply with the rules has imposed an entirely unnecessary burden on this court.

The transcript shows the following: In December of 1944, Murfee desired to purchase the Villa Chartier, a restaurant and bar located in San Mateo County. The then owner wanted $30,000 for the realty and $25,000 for the stock and equipment. Murfee was able to raise the money to purchase the stock and

equipment, but was unable to raise the money to buy the realty. Under these circumstances he asked Doelger, a friend of long standing, to invest in the property, offering to lease the premises from Doelger for $400 per month for some fixed period. Doelger agreed, and purchased the real property for $30,000, $20,000 of which was secured by means of a loan from the Bank of America, Doelger putting up the balance of $10,000 in cash. For purpose of convenience, Doelger took title in the name of appellant A. L. Porter, one of his employees, but admittedly Doelger was the real owner.

On December 20, 1944, respondent, and another person whose interest has since been purchased by respondent, and Porter, on behalf of Doelger, entered into a lease and option agreement. The instrument provided that the lease was to be for five years, and that the monthly rent of $400 per month should be payable on the 20th of each month. As security for the rent and the performance of the other obligations of the lease, Murfee gave appellants a chattel mortgage on all of the personal property located on the premises.

The instrument also gave Murfee an option to purchase the real property. It is the interpretation of this clause that presents the pivotal question on this appeal. It reads as follows: "In addition thereto, and as a material part hereof, the Lessees shall have, and they are hereby given the right or option, at the end of the first thirty months hereunder, but not before then, to purchase the said demised premises for the agreed sum or purchase price of Thirty Thousand Dollars ($30,000.00), plus the amounts, if any, Lessor may hereafter be required to expend for capital improvements or public assessments in connection with said demised premises; and if the said option is not exercised by the Lessees at the end of said first thirty months, the Lessees shall have, and they are hereby given, the right or option at any time thereafter and within the succeeding thirty months, to purchase said premises for the sum of Thirty-five Thousand Dollars ($35,000.00); plus the amounts, if any, Lessor may hereafter be required to expend for capital improvements or public assessments in connection with said demised premises; and upon the purchase of said premises by the Lessees at or after the expiration of the first thirty months, all liability for future rents hereunder shall terminate."

The lease expressly required that Murfee, at his own expense, should keep all improvements and personal property on

the premises insured in favor of lessors against fire or other casualty in companies satisfactory to Doelger.

Murfee proceeded to operate the premises under this lease-option agreement. Between December of 1944, and July of 1947, he expended over $50,000 in improvements. At all times here relevant Murfee kept all the personal property and improvements fully and adequately insured. Neither Miss Porter nor Doelger ever made inquiry of Murfee concerning the insurance, or ever requested him to take out a policy.

In March of 1945, Doelger, at the request of the Bank of America to have the property insured to protect its loan, without inquiry of or consultation or notification to Murfee, took out $20,000 fire insurance. The premium on this policy was $469.40. Doelger's office wrote insurance, and that office handled this policy, on which Doelger made a commission of about $90. Murfee was not billed for this premium until the escrow for the purchase was created, at which time he first learned that Doelger had taken out this duplicating policy.

About a year and a half before the first 30-month period had expired, Murfee offered to buy the property from Doelger, but the latter refused on the ground that he would rather have the $400 monthly rental during this 30-month period.

The 30-month period expired on June 20, 1947. In April of that year Murfee began negotiations with the Burlingame branch of the Bank of America to secure a loan to assist him in the purchase of the property pursuant to the terms of the option. The bank ordered a preliminary title search, which was issued on April 29, 1947. The manager of the bank testified that on May 20, 1947, he called Miss Porter, the holder of the record title, and informed her that Murfee was ready to close the transaction. She replied that the offer was a month too early. As a matter of fact, however, on the previous day, May 19, 1947, Miss Porter had deposited in escrow a deed naming Murfee as grantee, with a demand for $30,869.40, claiming $30,000 principal, $400 for rent not then due from May 20th to June 20th, and $469.40 for the insurance premium. Miss Porter placed no time limit on the escrow, and, in particular, gave no instruction that it could not be closed after June 20, 1947. She testified, however, that she construed the option clause to require the escrow to be closed no later than June 20, 1947.

Between May 20th, and June 20th various complications arose which delayed the actual payment of the money into escrow.

Between these dates Murfee became involved in litigation with his wife, and the bank required that she sign releases to this property before it would complete the loan. On June 17, 1947, the bank sent instructions to the title company, and included therewith were releases from Mrs. Murfee and a deed from her to Murfee. At this same time the title company received authority from the bank to draw on it for an additional amount, and to pay that amount to Mrs. Murfee. Thus, the record shows that this complication was entirely cleared up prior to June 20, 1947. The bank manager did testify, however, that on June 20, 1947, a formal satisfaction from Mrs. Murfee had not been received, and that until the bank had received such a document it would not have financed the transaction.

Another complication developed over a tax lien on the property amounting to $5,743.73. This was paid by Murfee sometime prior to June 20, 1947, and the bank so informed the title company early in May of 1947. Nevertheless, no release of the lien appeared in the county records, and it was not until June 25, 1947, that the title company received a letter from the revenue department of San Mateo. County acknowledging payment of the tax claim and stating that an official release would thereafter be issued.

Other difficulties arose over the chattel mortgage on the personal property held by appellants. When Miss Porter delivered the deed to the title company on May 19, 1947, she did not send a satisfaction of the chattel mortgage, and, in fact, such a satisfaction was not secured from appellants until late in July of 1947, the acknowledgment of the notary being dated July 31, 1947. The manager of the title company testified that this satisfaction was not indispensable, and that the title company could have closed the escrow without it, but the bank manager testified that, under the bank's rules, he could not advance the purchase price to Murfee until this satisfaction had been secured.

In order to secure the bank loan, Murfee was required to give a chattel mortgage to the bank. Notice of the mortgage was published on June 24, 1947, and the seven-day period of notice did not expire until July 2, 1947.

On June 17, 1947, the bank put up the $30,000 with the title company, but made no provision for the payment of the premium on the fire insurance. The title company received the vouchers in reference to the deal on June 19th, but because of the required notice to be given on the chattel mortgage, the

bank requested that the closing date be July 2, 1947. Miss Porter, however, demanded the payment of the insurance premium.

On June 24, 1947, Miss Porter, by messenger, demanded the return of her deed to Murfee, but the title company refused to surrender it. On June 30, 1947, Miss Porter sent additional instructions to the title company, ordering it not to close the deal unless Murfee paid $35,000 for the property, plus $469.40 for the insurance premium.

The transaction could have been closed on July 2, 1947, and perhaps on June 19, 1947, because on that date the money demanded had been deposited, but it was not actually closed until July 25, 1947, because of the dispute over the amount of the demand. Murfee paid the extra $5,469.40, under protest, in order to protect his rights, and then filed this action against Doelger and Porter to recover that sum.

The theory of the trial court in allowing Murfee to recover is disclosed in the following two findings:

"It is true that plaintiff had a reasonable time after the end of the thirtieth month, to-wit, after June 20, 1947, to tender payment of the $30,000.00 due as the purchase price; and it is true that said purchase price was tendered to defendants within a reasonable time after said 20th day of June, 1947. It is also true that the demands of the defendants contained in the instructions to the California Pacific Title Insurance Company, . . . were excessive in the sum of $869.40, since the $400.00 rental for the period from May 20, 1947, to June 20, 1947, was not then due and was thereafter paid on the regular rental day of May 20, 1947, and that the sum of $469.40 alleged by defendants would be due for insurance was an improper demand on plaintiff."

"It is true that the demands of defendants contained in said instructions to said Title Company were excessive in the sum of $5,469.40 in that the $469.40 for insurance taken out by defendants was not chargeable to plaintiff . . . and since the $5,000.00 in addition to the purchase price of $30,000.00 was not a valid demand on plaintiff inasmuch as plaintiff should have been allowed a reasonable time from June 20, 1947, to tender to defendants the sum of $30,000.00 as the option had been exercised by plaintiff prior to the thirty month period provided for in the above referred to option to purchase . . ."

The basic legal question presented is whether, under the lease-option agreement, Murfee was not only required to

notify Doelger of his election to purchase before June 20, 1947, but under conditions then existing, he was also required to tender the purchase price not later than that day.

Appellants contend that, under such an agreement, tender of the purchase money must be made before the expiration of the option.

Of course, the problem is one of intent. If the contract requires a tender of the purchase price before a specific date, time being of the essence of the option, the money must be tendered as specified, but the real question is whether, when a contract, such as the one here involved, confers an option which must be exercised on or before a fixed date, and is silent about the exact time of payment, the purchase price must be tendered on or before the date fixed for the exercise of the option, or whether the purchaser has a reasonable time thereafter to comply. The problem is discussed in an annotation in 101 American Law Reports, page 1432, where many cases involving various factual situations are collected and discussed.

The two California cases cited by appellants in support of their contention are cases where the contract was explicit as to time of payment. The following quotation from *Mariposa Commercial etc. Co.* v. *Peters*, 215 Cal. 134, at page 142 [8 P.2d 849], demonstrates the distinction between that case and the instant one: "As already stated the lease provided that if notice of election to exercise the option were given to respondent by November 25, 1929, *and if the purchase price of $570,000 were paid by November 30, 1929,* appellants could purchase, providing that at that time they were not in default under the terms of the lease. . . . In the second place appellants at no time paid or tendered the purchase price . . . which by the provisions of the lease and option had to be paid by November 30, 1929. Not having complied with the terms thereof the option terminated November 30, 1929." (Italics added.)

In *Heine* v. *Treadwell*, 72 Cal. 217 [13 P. 503], the other California case relied upon by appellants, the court based its decision upon its interpretation of the option agreement, holding that, under the express terms of that agreement, the purchase price had to be tendered at a time specified in the agreement. The action was one of ejectment. The lease gave the defendant the "privilege of purchasing at any time during the term for $3,250, upon giving ten days' previous notice of his election so to purchase . . ." (P. 219.) The court

quite properly held that, under the terms of the lease, tender of the purchase price was required before the lease had expired.

A case more closely analogous to the instant case is *Cates* v. *McNeil,* 169 Cal. 697 [147 P. 944]. There, the plaintiff brought an action in unlawful detainer, claiming that defendants were unlawfully holding over after the expiration of their lease. Defendants cross-complained, seeking specific performance under a provision of the lease giving them an option to purchase the leased premises. The option rights expired on May 27, 1912. Defendants had served upon plaintiff a notice of election to buy on May 25th, but had not then deposited the purchase price. The pertinent provision of the lease provided (p. 700): "And in case the party of the second part shall not exercise its right and option to purchase said land within two years from date hereof, then and in that event such right and option to purchase shall absolutely determine and be null and void except that the party of the second part, after having paid the rent on said property for the term of ten years shall then have the right and option to purchase said property for the price of $600.00 per acre."

The dispute arose at the termination of the 10-year period. Plaintiff argued that there was no valid acceptance by defendants because a tender had not been made within the 10-year period. In disposing of the contention the court stated (p. 706): "We do not deem it necessary here to discuss the terms of the notice served on appellants as to whether it constituted a tender of the purchase price at that time or not. The option clause gave the respondents a right to purchase the leased premises for the price of six hundred dollars an acre. There is nothing in the option clause which requires payment of the price of the land to be made or tendered when the option right is exercised in order to constitute an acceptance. Payment may or may not be made an essential condition to the exercise of such a right just as the parties see fit to provide for in the option agreement. But nothing is said about payment in the option clause here. It is not even mentioned. What the respondents acquired under the option clause was an irrevocable right of option to purchase the property at a specified price if they should at the end of ten years elect to do so and all that was necessary on their part to do as far as the terms of the option are concerned in order to constitute a binding contract for the sale and purchase of the premises was to give notice of their acceptance of the right. This they did. Payment of the purchase price at that

time was not a condition required by the option and it is not for the court to incorporate terms in it which the parties to it did not incorporate or even mention. Of course, payment would be essential before respondents would be entitled to a conveyance of the land but that is a matter pertaining to the performance of the contract of purchase and sale which had been created by the acceptance. In the absence of anything in the contract itself the obligation of the parties in the performance of the contract is governed by the law applying generally to bilateral contracts for the purchase and sale of property under which the agreement or covenant of the vendor to convey and the vendee to pay the purchase price are considered mutual and dependent covenants and are to be performed contemporaneously by the respective parties. Each party must perform his part in carrying out the contract and do so within a reasonable time after the contract is created. The payment of the purchase price and the delivery of the deed are to be done concurrently and as the option clause here did not provide otherwise respondents were not bound to make payment of the purchase price until appellants were prepared to make them a deed conveying to them a good title to the premises."

While it is true that in the Cates case the sellers did not deposit a deed, while in the instant case Doelger did deposit a deed prior to the expiration of the 30-month period, that fact cannot serve to distinguish the two cases because Doelger had also filed instructions calling for the payment of insurance, and Miss Porter failed to file a release of the chattel mortgage held by appellants. Thus, the deposit of the deed was subject to conditions not contained in the contract. Under the contract, appellants had no legal right to take out insurance as long as Murfee had the property insured. Appellants took out the insurance without Murfee's knowledge, permission or consent. They had no legal right to impose this charge of $469.40 upon him. So far as the chattel mortgage is concerned, the bank manager testified that he could not advance the money until a release of the chattel mortgage had been given. Thus, appellants' deposit of the deed was subject to invalid limitations and amounted, legally, to no deposit at all.

The rule of the Cates case is sound and in accordance with generally accepted legal principles. Supported by many cases, these general principles are expressed as follows in the following authorities: "The 'exercise' of an option is merely

the election of the optionee to purchase the property.'' (66 C.J. 497.) ''Except where required by statute to be in writing, an option may be exercised or accepted orally unless the contract requires a written acceptance . . .'' (66 C.J. 499.) ''. . . payment or tender is not essential unless it is a condition precedent.'' (66 C.J. 500.) ''If no time is specified the acceptance must be within what is a reasonable time under the circumstances of the particular case. The principle that time is of the essence of an option generally applies only to acceptance and not to performance.'' (66 C.J. 503; see, also, 55 Am.Jur. 512.) ''It is a general rule that an optionor who has given the right to purchase property within a specified time may not do any act or omit to perform any duty calculated to cause the optionee to delay in exercising the right.'' (55 Am.Jur. 510.) (For a detailed discussion of these general principles see 3 Thompson on Real Property (Perm. ed.), §§ 1325, 1329, 1330, 1331; vol. 8, §§ 4569, 4573.) Once the option to purchase was exercised, the lease and option agreement no longer existed, and a binding contract of purchase and sale came into existence between the parties. (55 Am.Jur. 494; *Smith* v. *Post,* 167 Cal. 69 [138 P. 705] ; *W. G. Reese Co.* v. *House,* 162 Cal. 740 [124 P. 442].)

Appellants argue that the finding that Murfee notified Doelger of his intent to exercise the option within the time required by the agreement is unsupported, apparently on the theory that no election was made exactly on June 20, 1947. Such an argument places formalism ahead of substance. The bank manager, on behalf of Murfee, notified appellants of Murfee's election to purchase on May 20, 1947, and the instructions of the purchaser were filed with the title company under date of June 17, 1947. Both were continuing acceptances, and in effect on June 20, 1947.

The acceptance here was clearly timely and complete. The appellants had deposited their deed on May 19, 1947, subject, however, to invalid instructions. The bank deposited its money and vouchers in escrow on June 19, 1947. This was a clear acceptance. The delay caused by the publication of the chattel mortgage did not qualify the acceptance. Releases filed by Mrs. Murfee on June 17th cleared any claim she might have had on the $30,000. The tax liens were paid prior to the 20th, and the fact that the title company was not so notified by the county was immaterial. Had appellants' demands not been in excess of the amount called for by the lease, the whole transaction could have been closed on the 20th,

subject only to the time interval required to publish notice in connection with the chattel mortgage. The delay was largely caused by appellants. At any rate, the money was deposited within a reasonable time. This being so, the acceptance was timely.

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.

A petition for a rehearing was denied March 10, 1950, and appellants' petition for a hearing by the Supreme Court was denied March 30, 1950.