[Civ. No. 16878.   First Dist., Div. Two.   Mar. 19, 1956.]

STATE OF CALIFORNIA, Respondent, v. JULES J. AGOSTINI, JR., et al., Appellants.

Frederick M. Fisk, Chickering & Gregory and John P. Macmeeken for Appellants.

Edmund G. Brown, Attorney General, and Leonard M. Friedman, Deputy Attorney General, for Respondent.

KAUFMAN, J.—This is an appeal from a judgment decreeing specific performance of a contract to convey real property arising out of the alleged exercise of an option granted to respondent State of California by the terms of a lease.

In October, 1946, respondent and appellants entered into a lease under which the State of California rented an office building in Oakland from appellants for a 10-year period at a monthly rental of $4,800. An option to purchase the building at any time after the beginning of the seventh year of tenancy was granted by paragraph 9 of the lease for the sum of $250,000. According to stipulations made during trial, the state had made all payments due under the lease prior to the time of the alleged exercise of its option.

The seventh year of tenancy commenced on January 1, 1953. On June 25, 1953, chapter 1349, California Statutes of 1953, became effective. That statute appropriated $250,000 to the State Department of Finance "to be expended during the 1952-1953 Fiscal Year" for the purchase of the property herein.

The following day, appellant Jules J. Agostini wrote to the State Director of Finance stating that the option had no force or effect inasmuch as the Department of Finance had no statutory authority authorizing them to so contract.

On Monday, June 29, the State Department of Finance addressed a letter to Mr. Agostini and the other two appellants notifying them that the state thereby exercised its option to purchase the leased premises in accordance with the provisions of paragraph 9. It was stated that a warrant in the sum of $250,000 would be transmitted to an authorized title insurance company with instructions to turn over the warrant to appellants upon deposit of a deed of grant conveying good and merchantable title, and upon issuance of a title insurance policy in the sum of $250,000.

On June 30, 1953, another letter was prepared and addressed to appellants at 2124 Kittredge Street, Berkeley, which was the office of appellant Agostini, and which is described in paragraph 5 of the lease as the address of the lessors, reading in part as follows:

"The State Department of Finance now has in its hands State of California Warrant No. 3147947, dated June 30, 1953, payable to you. You are hereby notified that, pursuant to the option to purchase contained in paragraph 9 of said lease, the State of California elects to purchase the leased premises on the terms therein specified. The State of California hereby offers to pay to you the sum of Two Hundred Fifty Thousand Dollars ($250,000) plus any sum payable to you under paragraph 6(b) of said lease and any other sums due you under the term of said lease upon compliance by you with the terms and conditions required of you by paragraph 9 of said lease, and such compliance is hereby demanded of you."

It was then stated that appellants could, if they wished, close the transaction through a title insurance company to be designated by them, and requested that they disregard that part of the letter of June 29, 1953, which stated that the state would deposit the money in a title company. The letter continued: "We are now tendering direct payment to you, if such is your desire, upon compliance with the conditions of said paragraph 9." This letter came into Mr. Agostini's hands on July 1 or 2, but no reply to either the letters of June 29 or 30 was made. One month later the state commenced this action, and deposited in court the rental for the month of July 1953, in case the court should find appellants entitled thereto. During trial, the warrant for $250,000 was deposited with the clerk of court.

The trial court found that by the letter of June 30, 1953, the state had notified appellants of its election to purchase said real property pursuant to the option in paragraph 9 of

the lease; that appellants received this communication after June 30, 1953; that by said communication the state tendered to appellants the sum of $250,000 and demanded that appellants comply with the terms and conditions of paragraph 9 of the lease; that the tender was in good faith, and that on or before June 30, 1953, the state had paid appellants all sums which had accrued under said paragraph 9. It was further found that appellants refused said tender, and that none of them communicated to respondent any objection to the tender. It was found that $250,000 was alleged by respondent and admitted by appellants to be the fair and reasonable market value of said real property.

Appellants contend that as a matter of law respondent failed to exercise its option in accordance with the requirements of paragraph 9 of the lease. Paragraph 9 reads as follows:

"9. The State shall have the exclusive right, option and privilege to purchase the premises herein demised at any time during the seventh, eighth, ninth or tenth years of the term of this lease upon payment by the State to the Lessor of the sum of Two Hundred and Fifty Thousand Dollars ($250,-000.00) lawful money of the United States of America, plus any sums owing the Lessor under the provisions of paragraph 6(b) hereof. In the event the State exercises its option to purchase the demised premises, the Lessor shall convey or cause to be conveyed said premises to the State by a deed of grant, conveying good and merchantable title, free and clear of all liens and encumbrances except taxes and assessments then current. Title insurance, in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00), issued by an authorized title insurance company of the State of California, shall be provided to the State at the time of closing, insuring title to said premises in the State free and clear of all defects, liens and encumbrances except taxes and assessments then current. The premium on such title insurance policy and any escrow fees shall be paid by the Lessor."

It is basic that the acceptance of an option must be unqualified and unconditional and according to the terms of the option. (*Flickinger* v. *Heck*, 187 Cal. 111, 113 [200 P. 1045]; *Hicks* v. *Christenson*, 174 Cal. 712 [164 P. 395]; *Callisch* v. *Farnham*, 83 Cal.App.2d 427, 430 [188 P.2d 775].) Appellants argue that the parties may, if they wish, contract that an option may be exercised by payment, and a contract then arises only by payment. (*Gordon* v. *Swan*, 43 Cal. 564.)

Appellant claims that the letter of June 30, 1953, stating that a warrant had been drawn in the sum of $250,000 payable to appellants deliverable upon compliance by appellants with the conditions of paragraph 9 was a mere counteroffer. It is appellants' position that payment into their hands of the $250,000 would have to be made before any contract of purchase and sale was created. They cite *Bartone* v. *Taylor-Benson-Jones Co., Ltd.,* 119 Cal.App.2d 79 [258 P.2d 1054], a case wherein it was held that there was no acceptance by defendants of an offer to them to purchase certain realty with the condition attached that the present owner retain the oil rights when they signed escrow instructions for fee title to the property and not for surface rights only. In the present case respondent asked only that appellants comply with the obligations they had previously agreed to assume under paragraph 9 if the option were exercised.

No extrinsic evidence was offered by the parties explanatory of the terms of the option provision in the lease. Respondent conceded that it was a fully integrated written agreement. (*Estate of Gaines,* 15 Cal.2d 255 [100 P.2d 1055].) Its interpretation is therefore a question of law for this court. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825] ; *Trubowitch* v. *Riverbank Canning Co.,* 30 Cal.2d 335 [182 P.2d 182].)

The state does not contend that it actually made payment of the $250,000 to appellants, but maintains that by its letter of June 30, 1953, it tendered payment of that sum which is sufficient for the exercise of the option and which gave rise to a binding contract of purchase and sale. Section 2074, Code of Civil Procedure, provides that "An offer in writing to pay a particular sum of money, or to deliver a written instrument of specific personal property, is, if not accepted, equivalent to the actual production and tender of the money, instrument, or property." It is well settled that tender of money is such acceptance of an option-offer as will create an enforceable contract. (*Mott* v. *Cline,* 200 Cal. 434 [253 P. 718] ; *Kelley* v. *Russell,* 50 Cal.App.2d 520 [123 P.2d 606] ; *Bourdieu* v. *Baker,* 6 Cal.App.2d 150 [44 P.2d 587].) Section 1496 of the Civil Code providing that actual production of the thing to be delivered is unnecessary unless the offer is accepted, and Section 2074 of the Code of Civil Procedure make it clear that such an offer in writing dispenses with actual production and tender of the property itself. (*Doak* v. *Bruson,* 152 Cal. 17, 20 [91 P. 1001] ; *Backus* v. *Sessions,* 17

Cal.2d 380 [110 P.2d 51]; *Johnson* v. *Broadway Bros.*, 90 Cal. App. 260, 265 [265 P. 855].)

It is undisputed that in the present case respondent's written offer which was mailed at Sacramento on June 30, 1953, addressed to all three appellants at the Kittredge Street address in Berkeley, was received by Agostini on July 1st or 2d. Appellants made no reply to this communication. That appellant Agostini did not wish in any event to be bound by the option is clear from a letter written by him on June 26, 1953 (the day after the appropriation bill became law), stating that the bill had been passed presuming that the state had an option, but that such option had "no force or effect for there is no statutory authority authorizing the Department of Finance to so contract." In view of this information, the state chose the wiser course of making a written offer of tender as permitted by the statute, rather than actual tender of the money.

Appellant argues that the option was an offer to create a unilateral contract. Respondent concedes this, but contends that once an offer of performance of such unilateral contract was made, mutuality of remedy then existed. It was held in *Murfee* v. *Porter*, 96 Cal.App.2d 9, 18 [214 P.2d 543], that once an option to purchase is exercised, the option and lease no longer exist, and a binding contract of purchase and sale comes into existence. (And see *Kerr* v. *Moore*, 6 Cal.App. 305, 307 [92 P. 107].) Section 45 of the Restatement of Contracts states: "If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given *or tendered* by the offeree in response thereto, the offeror is bound by a contract, the duty of immediate performance of which is conditional on the full consideration being offered *or tendered* . . ." (Emphasis ours.) Williston states that if an option makes an offer for a unilateral contract, performance must be *tendered* within the stated period. (3 Williston on Contracts, § 853.)

In the closing paragraphs of their reply brief appellants attempt to distinguish several of the authorities cited by respondent (*Kelley* v. *Russell*, 50 Cal.App.2d 520 [123 P.2d 606]; *Kofoed* v. *Gordon*, 122 Cal. 314 [54 P. 1115]; *Cates* v. *McNeil*, 169 Cal. 697 [147 P. 944]; *Marshall* v. *Hilton*, 209 Cal. 531 [289 P. 165]) on the ground that the issue of tender presented in those cases, unlike that raised by respondent herein, was addressed solely to the question of *performance* and not *acceptance*. It will be recalled that appellants have

argued that the offer of the option was an offer for a unilateral contract and that an acceptance to make the exercise of such option binding must be by *performance* of an act, namely by payment or tender of payment of the sum of $250,000.

Appellants maintain that there was no tender in conformity with paragraph 9 of the lease, but that a counteroffer was made when the state in its offer to pay the $250,000 asked for compliance by appellants with the terms and conditions required of appellants by said paragraph. This condition, they claim, was unauthorized, and therefore the letter was a mere counteroffer, unavailing until accepted by appellants.

It is true that acceptance of an offer must be unconditional, but that only means free of conditions which the other party is not bound to perform. There is no merit in this contention of appellants. (12 Cal.Jur.2d § 213, p. 433; *Wadleigh* v. *Phelps,* 149 Cal. 627 [87 P. 93]; *Gervaise* v. *Brookins,* 156 Cal. 103, 106 [103 P. 329].)

It is well established that an acceptance of an offer to enter into a bilateral contract is effective and deemed communicated as soon as deposited in the regular course of mail if the offer was made by mail, or if the circumstances are such that an acceptance by mail would be authorized. Whether such circumstances exist is always a fact question, and the court herein was justified in concluding that the use of the mail was contemplated in making tender.

Williston says, "If an offer for a unilateral contract calls for the performance of an act by the offeree and that act can be performed by dispatching something through the mail, on well recognized principles of the law of sales, title will pass and the act of the offeree will be complete as soon as the thing requested is sent. If instead of goods the offeree is requested to send money, the result is the same. As soon as the money is sent it becomes the property of the offeror, and he is bound to perform his promise for which the money was the consideration." (1 Williston on Contracts, § 81.) Therefore, if the warrant had actually been mailed with the letter, the transfer of the warrant to appellants would have become effective and complete at the moment it was dropped in the mail on June 30th. The property in the warrant would on that date have been appellant's, and he could not contend that the notice in the letter to perform his promises was an attempt to make a qualified and conditional acceptance. Since under section 2074, Code of Civil Procedure, the offer in

writing to pay, when not accepted, is equivalent to the production and tender of the money, such an offer should likewise be deemed effective when deposited in the mail on June 30th. This being true, tender had been made on that date, and was improperly refused by appellants.

Appellants have argued that since the appropriation bill specifically stated that it was "to be expended during the 1952-1953 Fiscal Year," and since Government Code, section 16304, provides that an appropriation shall be available for expenditure during the period specified therein, and unless otherwise specifically provided, it shall be "deemed expended at the time and to the extent that it has been encumbered by the creation of a valid obligation on the part of the State of California," the money was unavailable on July 1st or 2d when the letter was received, the fiscal year having expired on June 30th without a valid obligation having been incurred. Since it has been held above that a valid obligation was incurred by the tender of performance on June 30th, there is no force in this argument.

■ It was urged by appellant at the trial that even if the warrant is valid, tender has not been sufficient, because paragraph 9 calls for payment of "lawful money of the United States." He apparently does not raise that issue here, but in any event the laws of the state affecting the rights of the parties enter into the contract as if they were incorporated therein. (*Brown* v. *Ferdon,* 5 Cal.2d 226, 231 [54 P.2d 712].) Article IV, section 22 of the California Constitution provides that "no money shall be drawn from the Treasury but in consequence of appropriation made by law, and upon warrants duly drawn thereon by the Controller . . ." It has been held that this provision is mandatory and parties dealing with money in the state treasury are bound by it. (*Gillum* v. *Johnson,* 7 Cal.2d 744, 759 [62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595].) ■ An objection to the medium of payment on the ground that it is not legal tender is waived by a refusal of the tender on other grounds, as well as by a general refusal not specifying that the ground of refusal is the character of the medium of payment. (6 Williston on Contracts, rev. ed., § 1819.) Clearly, objection to the tender in the form of a warrant was clearly waived, for the trial court found that none of appellants made any objection to the tender. (And see *Stevens* v. *Hines,* 63 Cal.App. 80, 84 [218 P. 59].)

■ Finally, appellant contends that paragraph 18 of the

lease precludes the granting of specific performance since in that paragraph it is provided that "any provisions in this lease notwithstanding, this lease may be terminated only by mutual consent or by acquisition of title by the State in the manner hereinbefore provided, . . . and no breach of any provision of this lease shall work a forfeiture of this lease, and in the event that any provision of this lease is breached the sole remedy of the party damaged shall be for damages proximately caused by said breach." It was found by the trial court that the state requested defendants to comply with the terms and conditions of paragraph 9. However, the respondent is not asking for specific performance of the lease nor of the option provision therein. It is specific performance of the contract of sale created by the valid and rejected tender which respondent is seeking in this action. (See *Murfee* v. *Porter, supra*; *W. G. Reese Co.* v. *House,* 162 Cal. 740, 744 [124 P. 442].) Once the option was exercised the lease no longer existed.

There can be no question but that the warrant deposited in the trial court is still available to appellants in payment of the sum of $250,000. A warrant drawn by the controller is good for four years, and at the end of that time if not presented to the treasurer it must be cancelled. (Gov. Code, § 17070.) This warrant is therefore good until June 30, 1957.

The judgment therefore must be affirmed.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied April 18, 1956, and appellants' petition for a hearing by the Supreme Court was denied May 15, 1956.