No. 37,364

GEORGE ESTFAN and LAURINDA ESTFAN, *Appellants*, v. LOREN O. HAWKS, *Appellee*.

(204 P. 2d 780)

Opinion filed April 9, 1949.

*Austin M. Cowan,* of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson* and *Clarence N. Holeman,* all of Wichita, were with him on the briefs for the appellants.

*Emmet A. Blaes,* of Wichita, argued the cause, and *W. D. Jochems, J. Wirth Sargent, Roetzel Jochems, Robert G. Braden* and *S. C. Durbin,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an appeal by plaintiff lessors from a judgment in favor of defendant lessee in an ejectment action brought by plaintiffs to recover possession of property covered by a written

lease entered into by the parties on or about April 1, 1945. As the principal question before us involves the construction of the lease, it is set out in full and is as follows:

"LEASE AGREEMENT AND OPTION TO PURCHASE

"THIS AGREEMENT, Made and entered into by and between GEORGE ESTFAN and LAURINDA ESTFAN, his wife, hereinafter referred to as parties of the first part, and LOREN O. HAWKS, hereinafter referred to as party of the second part,

"WITNESSETH:

"That the parties of the first part in consideration of the rents, covenants and agreements of the said party of the second part hereinafter set forth, do hereby lease and rent to said party of the second part the following described property situated at 319 North Main Street, Wichita, Kansas, to wit:

"Lot 111 on Main Street in Original Town Addition to Wichita, Sedgwick County, Kansas, as shown by the recorded plat thereof.

"To have and to hold the same for the term of three years from the date of the execution of this agreement, said lease to expire on the 1st day of April, 1948.

"Party of the second part in consideration of the leasing of said premises as above set forth covenants and agrees with parties of the first part to pay to parties of the first part the sum of $55.00 per month during the period of said lease, payable on the 1st day of April, 1945, and each month thereafter. The party of the second part further agrees and covenants that at the expiration of the time mentioned in this lease he will give peaceable possession of said premises to parties of the first part, in as good a condition as it now is, the usual wear, unavoidable accident and loss by fire excepted, and will not make or suffer any waste thereof, nor assign this lease nor sublet nor permit any other person or persons to occupy the same, or make or suffer to be made any alterations therein without the consent of the parties of the first part in writing having been first obtained, and further agrees not to use or occupy said premises for any business deemed as hazardous on account of fire, nor in violation of any law.

"It is further agreed by party of the second part that parties of the first part shall have the right to terminate said lease upon sixty days written notice to party of the second part and at the expiration of said sixty days said party of the second part *agrees to give peaceable possession to parties of the first part.*

"It is further agreed that upon the violation or default in any of the preceding covenants and provisions, or the non-payment of rent as aforesaid, the said parties of the first part may at their election declare this lease at an end and recover the same as if held by forcible detainer.

"It is further agreed by and between the parties hereto that party of the second part shall have the option to purchase said property, if he shall so elect, by the giving of thirty days written notice to parties of the first part of his election so to do *thirty days* prior to the *expiration of said lease,* to wit: April 1, 1948.

"Party of the second part agrees to pay at the time of *his election to exer-*

*cise his right of option,* the sum of $2,000.00 *forthwith and the balance on the purchase price of $6,500.00* to be paid at the rate of $55.00 per month until the balance is paid in full, the unpaid balance to draw interest at the rate of 6% per annum and all payments shall be applied on the principal and interest shall be paid semi-annually on January 1st and July 1st of each year. It is further agreed that party of the first part upon the *exercise of said option by party* of the second part and *full compliance with all terms herein,* will convey to party of the second part said real estate, in fee simple, clear of all incumbrances whatsoever by a good and sufficient warranty deed and abstract without cost to second party. In consideration thereof parties of the first part agree to sell said real estate hereinbefore described to party of the second part on the basis above set out. It is further agreed that if said second party shall elect to purchase said property that second party shall pay taxes subsequent to the year 1948 when same became due and payable and *shall pay all insurance,* assessments or *impositions that may be legally levied or imposed upon said land subsequent to the date of said purchase.* Party of the second part further agrees to carry insurance on said property in a sum adequate to protect parties of the first part as their interest may appear and to pay all insurance premiums thereon.

"Party of the second part further agrees that in case of his failure to make any of said payments as above set out or to *perform any of the covenants on his part made* and entered into, within ten days after payment becomes due, this contract shall be forfeited and determined and party of the second part shall forfeit all payments made by him on this contract and all such payments shall be retained by parties of the first part in full satisfaction and liquidation of all damages by them sustained and shall have the right to reënter and take possession of said premises aforesaid.

"It is further agreed that time is the essence of this contract and that said contract shall be void if party of the second part shall sell or transfer the same without first paying the full purchase price under this contract.

"The parties hereto designate First National Bank of Wichita, Kansas, as the escrow agent and make this contract a part of the escrow agreement. Parties of the first part shall execute a deed as provided for herein to party of the second part and deliver same to the escrow agent, same to be held by said escrow agent until all the *terms and conditions as set out herein shall have been complied with by party of the second part.* Party of the second part may at any time pay the balance due on the purchase price, together with accrued interest, at which time the escrow agent is authorized to deliver the deed executed by parties of the first part to the Second party.

"It is mutually agreed that the covenants and agreements herein contained shall extend to and be obligatory upon the heirs executors, administrators and assigns of the respective parties hereto.

"In Witness Whereof the parties hereto have hereunto set their hands the day and year first above written.

"/s/ George Estfan
"/s/ Laurinda Estfan
"Parties of the First Part
"/s/ L. O. Hawks
"Party of the Second Part"

For convenience the lessors, plaintiffs below and appellants here, will be referred to as plaintiffs and the lessee, defendant below and appellee here, as defendant.

The defendant went into possession under the lease on or about April 1, 1945. On January 15, 1946, plaintiffs sent the following notice by registered mail to defendant:

". . . the undersigned being the lessors with reference to the property known as Lot 111 on Main Street in Original Town Addition to Wichita, Sedgwick County, Kansas, same being 319 North Main Street, hereby notify you that they hereby terminate said lease in accordance with the provisions therein contained, and you are hereby notified to vacate said premises at the expiration of sixty days from this date."

On March 1, 1946, the defendant sent the following letter to plaintiffs:

"Dear Mr. and Mrs. Estfan:

"I hereby elect to exercise the option to purchase the following described property, to wit:

"Lot 111 on Main Street in the original town, now city, of Wichita, Sedgwick County, Kansas, commonly known as 319 North Main Street, Wichita, Kansas

which option to purchase was given to me under the terms of that certain 'lease agreement and option to purchase' entered into between us on or about April 1, 1945, and with this notice I hereby transmit to you my certified check for $2,000.00, according to the terms of said option to purchase.

"(s) LOREN O. HAWKS"

This letter and certified check were received by plaintiffs although the payment was not accepted by them. In addition thereto the defendant duly and regularly tendered subsequent payments to apply on the purchase price of the property in accordance with the option to purchase. On March 30, 1946, plaintiffs caused a three-day notice to vacate to be served on defendant and later filed a forcible entry and detainer action in the city court of Wichita. Judgment was rendered for the defendant in that action and the appeal to the district court was never brought to trial.

This action in ejectment was filed on July 5, 1946, the petition alleging that plaintiffs were the legal owners of the property and that the defendant was in possession and unlawfully withheld the same from plaintiffs. The defendant denied generally and for his cross petition alleged that shortly after entering into possession of the premises he made valuable and lasting improvements to the extent of approximately $1,000; that at all times during his possession he had made prompt payment of rentals accruing prior to March 1,

1946; that he had elected to exercise the option to purchase contained in the lease agreement and had made all tenders and complied fully with his obligations under the agreement and that he was entitled to specific performance of said purchase agreement.

Plaintiffs' reply denied generally the answer of the defendant, and for answer to defendant's cross petition admitted that defendant had made prompt payment of all rentals prior to March 1, 1946; that on said date defendant had served a purported written notice of election to exercise the option to purchase accompanied by a tender of $2,000, but denied that defendant was the equitable owner of the property and then alleged the facts of the notice given by them to defendant on January 15, 1946, above referred to.

The case was submitted to the court on an agreed statement of facts in February, 1948, and on March 12 judgment was rendered in favor of the defendant upholding his election to exercise the option to purchase the property and decreeing specific performance of the purchase agreement, all without reference to the question of equities arising in defendant's favor by reason of the alleged permanent improvements made by him.

At this point it should be mentioned that on March 26, 1948, the court, pursuant to the provisions of G. S. 1935, 60-764, allowed defendant to file an affidavit and copy of a letter under date of March 2, 1948, in which defendant again as of that date elected to exercise the option to purchase, together with an amendment to his answer and cross petition to the effect that the improvements were made by defendant in reliance on his right to purchase the property in question. Plaintiffs' motion for a new trial being overruled, they appealed to this court and pose these questions:

"1. Was the Lease terminated by the 60 day notice as of the date of said Notice.

"2. Was the option provision of the Lease a separate and divisible portion of the Lease Agreement and could it be exercised after the Notice had been given to terminate the Lease?

"3. Assuming that the option provision was separate and distinct, could the defendant exercise said option prior to 30 days before April 1, 1948?

"4. Assuming that the defendant had a right to exercise the option, was he compelled to make payment of rentals or were the plaintiffs entitled to possession between the termination of the Lease and April 1, 1948."

The defendant contends that—

1. The wording of the option provision in the lease authorized an exercise of the option on the day the defendant tendered acceptance.

2. The lease had not been terminated at the time the option was exercised.

3. The defendant having properly exercised the option to purchase, equity should specifically enforce the resulting obligation of the plaintiffs to convey the property.

In other words, several questions are presented for our consideration—did the notice given by plaintiffs on January 15, 1946, terminate the lease, and if so, when—as of that date or as of the expiration of the 60-day period? If the former, was the defendant's right to exercise the option to purchase thereby extinguished as of that date? Or if the latter, could the defendant still exercise the option during the 60-day period as he attempted to do on March 1, 1946? And, going one step further, as is argued by defendant, even though the lease was terminated, did he have the right to exercise the option "thirty days prior to the expiration of said lease, to wit: April 1, 1948"?

There is nothing uncertain or ambiguous about the terms of this lease with the possible exception of that portion of the sentence last above quoted. It is of course presumed that the parties understood and knew what they were doing when they entered into the lease. By its very terms the plaintiff lessors had the express right to terminate the lease upon the giving of sixty days' written notice to defendant lessee, irrespective of any breach of its terms and conditions on the part of defendant (51 C. J. S., Landlord and Tenant, § 91), and without regard to our various provisions relating to notice and termination of tenancies found in article 5, chapter 67 of G. S. 1935. Having exercised such right, we hold that the notice of January 15, 1946, terminated the lease. But when, as of the date of the notice or as of the expiration of the sixty days? Counsel have not cited and our search has failed to disclose any cases squarely in point. On the general proposition, however, there is very respectable authority to the effect that the lease was terminated as of the date of the notice.

"Moreover, since notice to a tenant to quit is operative at the time it is served, not at the time limited for quitting, it terminates the tenant's option to purchase at that time." (32 Am. Jur., Landlord and Tenant, 287, § 309; see, also, sec. 996, p. 838, same volume; and *Thompson V. Coe*, 96 Conn. 644, 115 Atl. 219, 17 A. L. R. 1233.)

But what about the option to purchase—did defendant's right to exercise it survive the termination of the lease or did it fall with the lease? The answer is to be found in the determination of whether the whole agreement is deemed to be entire or divisible. In

*Sykes* V. *Perry,* 162 Kan. 365, 176 P. 2d 579, citing 12 Am. Jur., Contracts, § 315, it is said:

" 'No formula has been devised which furnishes a test for determining in all cases what contracts are severable and what are entire. The primary criterion for determining the question is the intention of the parties as determined by a fair construction of the terms and provisions of the contract itself, by the subject matter to which it has reference, and by the circumstances of the particular transaction giving rise to the question.' " (p. 370.)

and quoting further from *Crawford* v. *Investment Co.,* 91 Kan. 748, 139 Pac. 481, the rule was thus stated:

" 'The general rule is that whether or not a contract is entire or divisible is one of construction to be determined by the court according to the intention of the contracting parties as ascertained from the contract itself and upon a consideration of all the circumstances surrounding the making of it.' (p. 756.)" (p. 370.)

This instrument is denominated "Lease Agreement and Option to Purchase." Each of the parties was to receive certain benefits and to assume certain obligations. Each promised to do certain things. The lease and option to purchase rest upon a common and indivisible consideration and tested by the foregoing rules we think constitute an entire agreement. To hold otherwise would mean that the lessee would have the right to purchase during the basic term of the lease but long after the lease itself actually had been terminated by the lessors. From the language employed we cannot read any such intention.

In 32 Am. Jur., Landlord and Tenant, 279, § 299, it is said:

"Where a lease and option to purchase contained therein rest upon a common and indivisible consideration, when the lease falls the option goes with it."

and in 51 C. J. S., Landlord and Tenant, 647, § 87, the rule is stated:

"On the other hand, where the option to purchase in connection with the lease constitutes an entire agreement, the option itself falls if the lease is forfeited for a breach of the covenants therein contained, or if the lease is terminated at any time as by abandonment or mutual release."

Summing up these matters we hold that the defendant's right to exercise the option to purchase was extinguished by the plaintiffs' termination of the lease effected by their giving the notice of January 15, 1946. That being the case, it becomes unnecessary to determine with exactness on just what date defendant had the right to exercise the option. In any event he must have done so prior to the termination of the lease and we have already shown

that he did not do so. The lower court decided this case without reference to the question of equities arising in favor of the defendant by reason of the alleged permanent improvements made by him and so that matter is not before us for review.

From what has been said it therefore follows that the judgment of the trial court must be reversed with directions to enter judgment in favor of the plaintiffs. It is so ordered.