**UNITED STATES**

v.

**T. W. CORDER, Inc.**

**No. 13363.**

United States Court of Appeals
Ninth Circuit.

Dec. 4, 1953.

Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, S. Billingsley Hill, Attorneys, Washington, D. C., M. Mitchell Bourquin, Sp. Asst. to Atty. Gen., Francis N. Foley, Sp. Atty., San Francisco, Cal., for appellant.

Erskine, Erskine & Tulley, J. Benton Tulley, Morse Erskine II, San Francisco, Cal., for appellee.

Before ORR and POPE, Circuit Judges, and LEMMON, District Judge.

ORR, Circuit Judge.

On March 1, 1942, appellee T. W. Corder, Inc., was the owner of a lot and building located in Oakland, California. It leased the lot and building to the United States, hereafter referred to as the Government, for a term ending June 30, 1942, at a monthly rental of $550 payable in advance on the first day of each month. The lease agreement contained a provision that the Government could renew the lease from year to year thereafter by notice in writing and also contained the following option to purchase:

"14. The Government, during the term of this lease and any renewal thereof, shall have the option to purchase the demised premises at not to exceed $75,-000.00. Title shall be conveyed to the Government by general grant deed, free and clear of all encumbrances; provided that if the Attorney General upon examination of the abstract of title furnished by the Lessor, shall not approve the title and condemnation proceedings are instituted, the Lessor, if requested by the Government, agrees to the entry of a consent verdict fixing the award at the option price."

On June 30, 1943, the lease then being in full force by renewal, an amendment

thereof was made so as to provide that the term of the lease should continue through June 30, 1944, and that unless the Government should give thirty days written notice of termination before June 30th of each year thereafter, the lease would remain in force from year to year without further notice but in no event beyond June 30, 1953.

On June 27, 1947, the Veterans' Administration sent a telegram to appellee reading as follows:

"The United States Of America By This Notice Elects To And Hereby Does Accept The Option To Purchase The Corder Building In The City Of Oakland, County Of Alameda, State Of California, And The Land Site Thereof Described As Being Lot No. 9 In Block No. 267 As Said Lot And Block Are Delineated And So Described Upon That Certain Map Entitled Quote Map Of The Casserly Tract On 14Th Street, Oakland Unquote Filed July 23, 1869 In The Office Of The Court Recorder Of Alameda County, And All Improvements Situate On Said Land. The Option Hereby Accepted Is Contained In Lease Contract V AM 21928 By And Between The United States Of America And T. W. Corder, Inc. Dated March 1, 1942 And Set Forth As Paragraph 14 Therein. Upon Receipt Of Confirmation Letter Which Follows, Kindly Advise This Office The Least Sum Of Money You Will Accept For Conveyance Of Fee Title Of The Above Described Property. (11CBA)"

On July 9, 1947, the Veterans' Administration wrote appellee a letter stating, in part:

"Subsequent negotiations for securing title evidence and the details concurrent with the transfer of title from your company to the United States of America will be initiated by the office of the Deputy Administrator of Veterans Affairs, Veterans Administration, Branch Office No. 12, 180 New Montgomery Street, San Francisco, California, who has been requested to communicate with you.

"As you are aware, vesting of title to the land and building must necessarily be subsequent to an opinion from the Attorney General as to the validity of the title held by your corporation. In view of the foregoing, it is the desire of the Veterans Administration that lease contract V Am–21928 remain in full force and effect until the deed to the land is recorded in the name of the Government, and the purchase price paid."

In answer to the Government's request to state its minimum price for the property, the appellee, on July 14, 1947, through its president, replied that it would "positively accept no less than $75,000.00 net to us."

On August 29, 1947, the Veterans' Administration notified appellee that its letter of July 9, 1947, stating that the lease was to "remain in full force and effect" was in error and "should be disregarded inasmuch as the Government is legally precluded from making rental payments subsequent to exercise of the purchase option" and claimed an overpayment of rent for the last three days of June 1947. The parties exchanged further correspondence with relation to the obligation of the Government to pay rent until payment of the purchase price.

On December 5, 1947, appellee served notice upon the Government demanding that rent be paid within three days or that the premises be vacated. The rent was not paid and on December 13, 1947, notice of rescission of the lease and option was served upon the Government. On December 18, 1947, appellee instituted an action in the District Court of the United States to terminate the lease and recover from the Government rent claimed to be due under the lease at $550 per month from July 1, 1947, through December 8, 1947, and the reasonable value for the use of the premises from December 9, 1947, until surrender of possession.

On January 6, 1948, the Government instituted a suit to condemn the property in question and on January 15, 1948, filed a declaration of taking with a deposit of $75,000.00 (the amount specified in the option agreement) for the fee title.

In the rent case judgment was entered in favor of T. W. Corder, Inc., the appellee in the instant case. In the condemnation case presently before us the Government insists that the price to be paid for the land and building should be $75,000.00, the sum named in the option. The trial court rejected this contention and rendered a judgment in favor of appellee in the sum of $93,547.07, which sum represents the $95,000.00 fixed as the fair market value of the condemned property less $1,452.93 previously paid to Alameda County for taxes.

The trial judge made the following finding:

"At no time prior to the deposit of $75,000.00 with the Clerk of this Court on January 15, 1948, did the plaintiff pay or tender to T. W. Corder, Inc., the sum of $75,000.00 for said property or deposit the same in escrow for payment to defendant upon the defendant conveying the property by good and sufficient deed to plaintiff; but at all times plaintiff has insisted that the defendant should rebate and pay to plaintiff the rental for the period June 28, through June 30; and that plaintiff would only pay the $75,000.00 less the rebate of rent for June 28 through 30 and on the further claim that defendant waive its claim for rental due from plaintiff."

This finding is supported by stipulated facts, the stipulation being as follows:

"At no time prior to the deposit of $75,000 with the Clerk of this Court at the time of the commencement of this condemnation action, did the plaintiff pay to the defendant the purchase price for said property or deposit the same in escrow for payment to defendant upon the defendant conveying the property by good and sufficient deed to plaintiff; but at all times plaintiff has insisted that the defendant was not entitled to rental after June 27, 1947, and that the defendant should rebate and pay to plaintiff the rental for the period June 28 through June 30; and that plaintiff would only pay the $75,000 less the rebate of rent for June 28 through June 30."

The option price was not to exceed $75,000.00, but at no time did the Government unequivocally offer to purchase the property in accordance with its terms. The telegram of June 27, 1947, was not an acceptance of the option but was mere notice that the Government wished to exercise its option and a request that appellee advise it of the lowest price appellee would accept for the property. Appellee notified the Government that it would accept no less than $75,000.00. From the stipulation it clearly appears that the Government never made an unconditional offer to pay $75,000.00 for the property. It at all times insisted that it had the right to deduct the alleged overpayment of three days rent. As a result of the failure to exercise the option in accordance with its terms no bilateral contract for the purchase of the property came into existence. To exercise an option the notice thereof "must be unconditional and in exact accord with the terms of the option." 1 Corbin on Contracts, § 264, p. 879; Colyear v. Tobriner, 1936, 7 Cal.2d 735, 62 P.2d 741, 109 A.L.R. 191. The Government was at no time bound by its conditional acceptance of the option and appellee was not bound because the option had not been exercised.

When the Government refused to pay the rent due under the lease it became in default and appellee was entitled to rescind the lease. After due notice appellee, on December 8, 1947, terminated the lease for the nonpayment of rent and the termination was upheld by the District Court in the rent action. The lease being terminated, the right to exercise the option ceased. Sandra Frocks, Inc. v. Ziff, 1947, 397 Ill. 497, 74 N.E.2d 699; Bond v. Long, 1949, 338 Ill.App. 1, 86 N.E.2d 585; Estfan v. Hawks, 1949, 166 Kan. 712, 204 P.2d 780, 10 A.L.R.2d 877. There was no option in existence at the time the condemnation proceeding was instituted and the deposit of $75,000.00 made in court. Hence, the provisions of the option concerning the value to be placed on the

property in the event of condemnation were not applicable and the trial court was free to fix the value of the property from the facts adduced at the trial.

Judgment affirmed.