SOL GERSHENHORN AND D. H. CAPLOW, APPEL-
LANTS, v. WALTER R. STUTZ ENTERPRISES, A
LIMITED PARTNERSHIP, WALTER R. STUTZ AND
LOUIS STUTZ, RESPONDENTS.

No. 3981

November 30, 1956                    304 P.2d 395

(Rehearing denied January 29, 1957. See 72 Nev. 312
for Opinion.)

*Harry E. Claiborne,* of Las Vegas, and *Alvin Ger-
shenson,* of Chicago, Illinois, for Appellants.

*Morse, Graves & Compton,* of Las Vegas, and *W.
Bruce Beckley,* of Las Vegas, for Respondents.

## OPINION

By the Court, BADT, J.:

In this action, by a landlord for a declaration of the rights of the parties under a lease and option, for a cancellation of the lease, restitution of the premises and damages, the main questions presented on this appeal are as follows: (1) Is there substantial evidence to support the trial court's findings that the building, which the lessors agreed to construct, was substantially completed and ready for occupancy in accordance with the agreement of the parties; that the lessees entered into occupancy thereof and that the lessees were in default in the performance of numerous covenants of the lease? (2) Was "substantial compliance" by the lessors sufficient to entitle them to relief or were certain covenants on their part to be performed such conditions precedent as to require an exact and complete performance? (3)

Was the option to purchase, contained in the lease, such an independent, separate and severable contract as to entitle the lessees to exercise such option despite their default in payment of rents and in the performance of other covenants of the lease? (4) Did the lessees effectively exercise their option to purchase in accordance with the terms of the lease? (5) Was there a fatal misjoinder of parties plaintiff? (6) Was there a fatal nonjoinder of parties defendant? (7) Was there a fatal variance between the pleadings and the proof? (8) Is there support in the record for the items of damage found by the court in the respective sums of $100,000 past-due rentals, $75,000 excess costs of the structure under the terms of the contract, and particularly $50,-000 damages reflecting the finding of fact that the lessors were compelled to defend at their own cost numerous lien foreclosure actions for labor and materials for which the lessees were responsible under the lease? Our disposition of some of these questions will eliminate the necessity for any extensive treatment of others. Some additional incidental points are also involved. In the following statement of facts we shall, for the most part, refer to the plaintiffs and respondents as the lessors and the defendants and appellants as the lessees.

Appellant Caplow, by assignment, replaced one O'Connor as one of the original lessees. On February 12, 1954, the lessors leased to the lessees certain real property in Clark County, Nevada, described by metes and bounds, for which the lessees agreed to pay $5,000 a month rent for five years "beginning when the premises and building being constructed by lessors for lessees is completed, ready and approved for occupancy." The lessors represented that the zoning and other classification of the premises permitted the "erection, construction and operation of a building and appurtenances which shall be used for legal gambling and other incidental purposes in accordance with the laws of the State of Nevada." The size of the building was agreed upon and its use described as for cocktail lounge, coffee shop, gambling

casino and incidental purposes, with road approaches, driveways, parking facilities and landscaping to the satisfaction of the lessees, as well as facilities for sewage disposal, water, electrical and other utilities and facilities. The lessors were not required to furnish the air conditioning, heating or ventilating units, trade fixtures or outdoor neon signs, but were to provide the necessary outlets and openings therefor. The lessors agreed not to permit mechanics' liens to be filed against the premises and to pay promptly for all labor and materials. The lease provided further: "The lessors agree that all improvements, installations and repairs made by them shall be approved in respect to inflammability and safety to the public before the premises are open to the public by some person granted authority to do so by the County of Clark, State of Nevada, and if there is no such authorized person, then by a person or agency qualified to do so by reason of experience in fire protection." The lease further provided that in default of payment of rent for 30 days or the breach of any other covenant for 60 days after notice, the lessors might cancel and terminate the lease and reenter. The lease provided further: "Lessees agree that if a valid execution or other process be levied upon the interest of the lessees or shall not be cured, removed or satisfied within 90 days * * *," the lessors should have the right to cancel the lease and reenter. A successful action by the lessors against the lessees would entitle the lessors to a judgment for attorney fees as part of the costs. There was a corresponding reciprocal clause for the lessees.

Paragraph 28 of the lease reads in part as follows: "Lessees * * * are hereby given the option for three years from completion of the building to be erected * * * to purchase the entire premises * * * at the price and value of $417,000 * * * plus a sum equivalent to the cost of the improvements to be erected * * * ascertained by the production of the records of the lessors * * *. Such option may be exercised by the lessees as aforesaid, by written notice to the

lessors or their assigns, at any time within such 3-year period."

On May 19, 1954, an amendment to the lease was executed in which the size of the building to be constructed was increased, the date of completion extended to July 15, 1954, and the cost fixed at not more than $123,200, plus excess costs of construction not to exceed $12 per square foot. To the $5,000 monthly rental was added an additional sum of 20 percent of the net profits of the business conducted on the premises, subject to certain reductions and conditions. This provision apparently never came into effect. It was further provided that if the business to be conducted should not commence within 6 months from completion of the building, the lease might be terminated at the option of the lessors, in which event, however, they were to reimburse the lessees for the latter's costs of furniture, fixtures, equipment, supplies etc. The amendment provided further that if the lease were assigned to a limited partnership in which the lessors should hold a 20 percent interest, a three-year option was given to such limited partnership to purchase the premises for $750,000. This provision never became effective. The lessees agreed to lend the lessors $60,000 to assist in the construction of the premises, to be evidenced by noninterest bearing notes payable on or before five years. Of this sum $47,500 was advanced and the notes were given.

A second written amendment was executed June 12, 1954, which permitted the lessees to erect at their own costs a theater and restaurant building to be attached to the casino building. This would involve no further rentals and would add no additional amount to the option price.

Date for completion of construction and delivery of possession was extended to September 10, 1954. On or about that date a notice of completion of construction was filed and the lessors served the lessees with a written notice thereof, and with notice of the additional construction costs subject to the limitations of the contract,

computed according to figures submitted to be the sum of $65,163.32, payment of which sum was demanded.

The original complaint in the action filed December 4, 1954, alleged accrual of rentals from September 10, 1954, to date, and two supplemental complaints alleged the further accrual of rentals, default in payment and default in the obligation to commence business within six months, in addition to default in payment of construction costs, discharge of liens, etc.

The lessees and defendants, Caplow and Gershenhorn, appellants herein, answered separately, denied the material allegations of the complaint, alleged default of the lessors in not completing the building, alleged conspiracy and fraud to deprive the lessees of the building and counterclaimed for damages in the sum of $547,500, plus $200,000 additional damages for failing to carry out an oral agreement for the acquisition and assignment of a lease on certain neighboring premises. Further pleadings put all of these matters at issue.

The case was tried to the court without a jury and after submission on briefs, it appears that the court filed a written decision, into which the learned trial judge incorporated findings of fact and conclusions of law drawn by him. In these findings the court found that the structure was substantially completed and ready for occupancy as of September 10, 1954, and that any delay was the result of numerous changes of plans by the lessees; that notice of completion was given and that the lessees entered into possession September 10, 1954, and that no part of the $5,000 monthly rentals has been paid; that the lessees failed to pay the excess costs; that they failed to advance $12,500 of their agreed $60,000 loan; that they failed to commence business within six months after completion or at all; that they failed to keep the premises clear of mechanics' and materialmen's liens; that the lessors were compelled, to their damage, to defend numerous lien foreclosure actions; that the lessors had received from the lessees $47,500 of the agreed $60,000 loan and had signed notes for the

sums received; that excess costs of the structure, payable by the lessees under their agreement, had actually been paid by the lessors in the sum of $75,220, subject to certain credits; that the lessees were in default under the lease agreement at the time they attempted to exercise the purported option; that, except as specifically found, the allegations and denials of the counterclaim were untrue.

As conclusions of law the court found the lessors, respondents herein, entitled to judgment for $100,000 past-due rentals, $75,000 excess costs of the structure under the agreement, $50,000 damages, subject to credit of $47,500 for advances on the notes, and entitled to the surrender and cancellation of the $47,500 notes; plus the plaintiffs' costs including an attorney fee in the sum of $10,000.

These conclusions of law were written into a formal judgment except that the item of $50,000 damages, less credit of the sums advanced on the notes, was written as a judgment for $2500 damages, plus the surrender and cancellation of the notes. The judgment also ordered cancellation of all of the agreements and that a writ of restitution issue.

(1) The main assignment of error by appellants is that the evidence does not support the court's findings of fact. They repeatedly call attention to the frank statements of respondents that a number of items of construction required completion. The record, however, is replete with the testimony of the respondents and their witnesses amply sustaining the trial court's view that such items (except as to certain trivial matters) were entirely the responsibility of appellants. It will be recalled that the second amendment to the lease permitted the appellant lessees, at their own cost, to build a theater cafe. This required substantial revision of the casino building itself. The kitchen was increased to about

double size, which in turn necessitated the opening up of the plumbing. New openings in the walls had to be constructed, present openings had to be closed. The bar was moved to the opposite side of the building. The electrical plans were drastically changed. The spot lights, the projection room, the stage lighting, etc., required a large power substation to take care of the two buildings. The original power plans were entirely inadequate to the added load. It was items such as these and numerous others that had not been completed. There was ample testimony, which the court apparently decided was credible, to the effect that lessees had agreed to defray the costs of all such items. Other changes in plans made by the lessees were the cause of the delaying of the completion date from June to July and eventually to September 10, 1954. To consider in detail the five large volumes of record and the many exhibits would prolong this opinion without necessity or purpose. Many of the contentions of respondents are not disputed, many of them are the subject of much conflicting testimony. Under such condition of the record we shall not disturb the finding. Friendly v. Larsen, 62 Nev. 135, 144 P.2d 747. The same thing applies to substantiation of the default of the lessees in the performance of their covenants. Not any of the $5,000 monthly rentals had been paid. The lessees had not opened for business within six months after completion. Accounts submitted by the lessors showed that the lessees, after being credited with all payments made by them, had not paid the construction costs as agreed. They had failed to obtain the necessary gambling licenses from the Nevada Tax Commission, Stats. 1953, 439, to authorize them to open up their gambling casino. They had not completed the construction of the theater restaurant.

(2) Pointing to a number of unfinished details and pointing particularly to the alleged failure of the lessors

to obtain from the county authorities certain certificates of occupancy, appellants contend that the theory of substantial compliance does not apply, but that the performance of these covenants is a condition precedent to plaintiffs' right of recovery. They refer particularly to the covenant that rental was to begin under the lease "when the premises and building being constructed by lessors for lessees is completed and ready for occupancy"; that "the lessors agree that all improvements, installations and repair made by them shall be approved in respect to inflammability and safety to the public before the premises are open to the public by some person granted authority to do so by the County of Clark, State of Nevada, and if there is no such authorized person, then by a person or agency qualified to do so by reason of experience in fire protection"; that under the uniform building code of Clark County no building or structure may be occupied without a certificate of occupancy issued by a building official; that it was admitted that even after September 10, 1954, the electrical and plumbing inspector certified: "1. The substation is not completed. 2. The electric in building is not completed. 3. The plumbing in building is not completed. 4. The kitchen is not completed. 5. The dining room and theater is not completed in any detail." It may be noted in response to this contention, however, that each of these items was the obligation of the lessees and was not the obligation of the lessors. Many pages of testimony and numerous exhibits were devoted to these items and we cannot substitute our own judgment for that of the learned trial judge as to the weight to be given to this evidence. The official building inspectors testified that as of September 10, 1954, they would have recommended the issuance of a certificate of occupancy if the lessees had completed their changes in the kitchen and electrical system. The architect on the project likewise testified that on that date the building was substantially completed and he would give an architect's certificate of completion. Delay or failure in obtaining such certificate can hardly be

urged by the lessees when such delay or failure was the result in turn of the failure of the lessees to complete the very items which fell under their own responsibility. There was ample support for the court's finding of substantial compliance and for its conclusion that substantial compliance was all that was required. Sharp v. Twin Lakes Corporation, 71 Nev. 162, 283 P.2d 611.

Respondents point out that even assuming a failure of completion of the building, such failure was waived because the lessees went into possession and thereby became liable for the rent. Anno. 28 A.L.R.2d 458. They point out that the keys were delivered to appellants, who thereupon began installation of fixtures, bars, carpets, booths, stage curtain, stools, slot machines and gambling equipment; that they opened their offices on the second floor, installed a telephone, employed an operator, publicity men etc., and carried on all operations available to them prior to opening. However, in view of our holding that there was ample support of the court's findings of substantial completion, it becomes unnecessary for us to pass on the question of waiver.

(3) Appellants assert that they exercised their option to purchase; that it was an independent, separate and severable contract not dependent upon the lessees' performance of the covenants of the lease; that upon such exercise the rentals ceased, as the contract then became one of seller and buyer and no longer one of lessor and lessee. Under some circumstances this might be so. See Murfee v. Porter, 96 Cal.App.2d 9, 214 P.2d 543. Here the lease and option to purchase both rested upon a common and indivisible consideration. This consideration was the performance by the lessees of the covenants of their lease, foremost of which was the payment of rent. As the lessees were in default in payment of rent and as the lessors gave notice of cancellation by reason thereof and as such cancellation was in accordance with the terms thereof, the lease was thereby terminated, and,

the lease being terminated, the right to exercise the
option ceased. Estfan v. Hawks, 166 Kans. 712, 204 P.2d
780, 10 A.L.R.2d 877.

(4) For a further equally impelling reason the pur-
ported exercise of the option to purchase cannot prevail.
It will be recalled that the action was commenced Decem-
ber 4, 1954, alleging completion of the building Septem-
ber 10, 1954. The defendants answered on March 15 and
March 17, respectively, putting in issue all of the matters
hereinabove discussed with reference to the completion
of the building. On March 21, 1955, after such issues had
been framed, and six months after plaintiffs claimed
completion and delivery of the premises, Caplow, one of
the lessees, handed to the lessors a letter comprising
some 1300 or 1400 words stating: "This is to advise that
as lessee under the lease dated February 12, 1954, I have
elected to exercise the option to purchase the prem-
ises and property containing all buildings and appur-
tenances described as: [description] in accordance with
paragraph 28 of said lease at the price of $417,000 plus
a sum equivalent to the cost of the improvements erected
by lessors upon said premises; that is, the casino build-
ing and appurtenances, and in connection with the exer-
cise of said option, I call your attention to the following
matters." The letter then listed under separate captions
carpentry work, electrical work, plumbing, painting,
insulation, staining of roof, landscaping etc. It then
refers to sundry paragraphs of the lease requiring the
improvements to be made in accordance with applicable
city, county and state laws, ordinances, codes, regula-
tions etc., and alleges the failure of the lessor to procure
certificates of occupancy from the building commission,
the fire department, the health department, etc. Demand
was made for the completion of said building in all of
the respects mentioned. The letter analyzed and defined
the provisions of the lease, demanded a preliminary title
report, outlined the matters to be contained therein, and
called attention to the covenant of the lessors not to

permit mechanics' liens to be filed, etc. Attention was then called to the provision of the lease that rental was to begin only upon completion of the building and was to cease on exercise of option to purchase. Reference was then made in the letter to certain credits against the option price of $417,000 and concludes: "We have arranged for deposit of the option price with Tannen Investment Company, 139 South Beverly Drive, Beverly Hills, California, and will be prepared to deposit the option price in an escrow company to be mutually agreed upon, located in Las Vegas, Nevada, or in California."

Thus the so-called election to purchase put in issue the very matters already in issue under the pleadings in the pending suit in the district court. It is hardly conceivable that these issues could be tried out in any other tribunal while such suit was pending. The letter was handed to the lessors in the midst of one of the proceedings of that very action, namely, during the taking of a deposition. It was by its very terms contingent upon the determination of the issues already raised in the pending suit. The statement that the lessees *"will be prepared to deposit* the option price in an escrow company" cannot be considered otherwise than as being tied in to the contentions of the lessee Caplow that no rentals were due from September 10, 1954, to March 21, 1955; that no rentals would accrue after March 21, 1955; that the option price would be reduced to the extent of all liens filed against the property and to the extent of large sums of money as damages resulting from alleged breaches on the part of the lessors and to the extent of an estimated $50,000 required to complete the building. These were all contested matters, and the notice by lessee Caplow to the effect that "I have elected to exercise the option" and that "we will be prepared to deposit the option price" under the conditions mentioned and particularly in view of the finding of the court that lessors had substantially completed the building and had delivered the premises on September 10, 1954, cannot in law be considered an exercise of the option.

Judge WILLIAM E. ORR, a former chief justice of this court, writing the opinion for the Court of Appeals of the Ninth Circuit in United States v. Corder, 9 Cir., 208 F.2d 411, 413, cites Estfan v. Hawks, supra, with approval, but the Corder case is also direct authority for the proposition that under the conditions discussed above the so-called notice of election to exercise the option was not such an unequivocal offer as to be effective. Judge ORR notes, in the Corder case, that the government's notice "was mere notice that the Government *wished to exercise its option* (emphasis supplied) and a request that appellee advise it of the lowest price appellee would accept for the property. * * * the Government never made an unconditional offer to pay $75,000.00 for the property. It at all times insisted that it had the right to deduct the alleged overpayment of three days rent. As a result of the failure to exercise the option in accordance with its terms no bilateral contract for the purchase of the property came into existence. To exercise an option the notice thereof 'must be unconditional and in exact accord with the terms of the option.' (citing authorities) The Government was at no time bound by its conditional acceptance of the option and appellee was not bound because the option had not been exercised." The language used above is particularly applicable here where appellants at no time unequivocally offered to purchase the property in accordance with the terms of the option. They simply notified the lessors that they would "be prepared to deposit the option price" with the escrow company, upon compliance by respondents with many disputed conditions, some of which respondents contended they had substantially performed and some of which they contended it was the duty of appellants to perform. No bilateral contract came into existence. Assuming an offer by lessors (the granting of an option to purchase) there was no acceptance by the lessees. The purported acceptance was subject to many conditions which, as noted, were already in issue in the pending suit.

(5) Appellants assert that there was a misjoinder of parties plaintiff, relying upon certain sections of Nevada Compiled Laws, which have been superseded by N.R.C.P. They also refer to authorities based upon the former practice. Plaintiffs named in the complaint were "Walter R. Stutz Enterprises, a limited partnership, Walter R. Stutz and Louis Stutz." Appellants assert that all of the exhibits and the testimony of plaintiff Walter R. Stutz show that the only proper party plaintiff was Walter R. Stutz Enterprises, a limited partnership, and that neither Walter R. Stutz, individually, nor Louis Stutz, individually, was shown to have any interest entitling him to be joined as plaintiff. Rule 21 N.R.C.P. is now applicable to the alleged misjoinder. It reads: "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. * * *" The record does not disclose any motion in the premises in the trial court. The question is raised here for the first time. It is not shown how the asserted misjoinder was prejudicial. The assignment is without merit. Meyercheck v. Givens, 7 Cir., 180 F.2d 221.

(6) Appellants contend that there was a nonjoinder of essential parties defendant. While a motion to join additional parties defendant was made in the trial court, this motion was withdrawn when the plaintiffs called the court's attention to their attempts to obtain through depositions of the named defendants the names of other parties who might be interested with them in the enterprise described, and the consistent refusal of such named defendants to divulge the names of any persons who might be so interested. The separate counsel for defendant Gershenhorn and for defendant Caplow conceded in open court that plaintiffs' point was well taken, and the court denied the motion. Appellants do not deny that

such was the situation, but appear now to contend that their waiver could not bind other parties and that the court should have joined them of its own motion. No argument is advanced in support of this contention, nor do appellants attempt to point out any prejudice resulting either to the named defendants or to the other persons purportedly interested with them in the enterprise. The cases cited by appellants in support of the assignment are not in point, and we find no merit in the assignment.

(7) Appellants next assert that there was a fatal variance between the pleadings and the proof with reference to that part of the judgment ordering a cancellation of the $47,500 five-year noninterest bearing notes given the lessees by the lessors in evidence of moneys advanced by the lessees to assist in the construction by the lessors. Appellants say that these notes were not described in the complaint. However, the lease attached to the complaint as an exhibit and expressly made a part thereof required the notes to be given and the complaint alleged that of the required $60,000 loan required by the specific provision of the lease, $47,500 had been advanced but that there had been a default in the advance of $12,500. Defendants in their pleadings alleged their advance of $47,500 as a loan in accordance with the terms of the lease, defendants Caplow and Gershenhorn both testified to the making of the loan, and the matter of the notes was the subject of considerable examination, in which the court itself joined. Accordingly, (a) the question of the notes was sufficiently raised by the pleadings; and (b) the issue of the right to a cancellation of the notes was tried before the court by consent of the parties and must in any event be treated in all respects as if it had been raised in the pleadings. Rule 15(b) N.R.C.P. Nor does the lack of an amendment in the premises affect the validity of the judgment. See Moore's Federal Practice, sec. 15.13, commenting on this

rule. See also Barron and Holtzoff, Federal Practice and Procedure, sec. 449. The assignment is without merit. We have thus concluded that there is no merit in any of the assignments 1 to 7, inclusive. The next assignment, however, presents more difficulty.

(8) We have noted that, in addition to adjudging a cancellation of the contract and awarding restitution of the premises, the court rendered judgment against the lessees for $100,000 past-due rentals, $75,000 excess costs of the structure under the terms of the contract, $10,000 attorney fees and $50,000 additional damage. The $100,-000 rental is based upon the agreed $5,000 per month for twenty months. The item of $75,000 for excess construction costs was arrived at by the court from oral and documentary evidence supporting these costs in a considerably larger sum but limited by the provisions of the lease to $12 per square foot, and finds ample substantiation in the record. The $10,000 attorney fee was allowed under the provisions of the lease.

The judgment for $50,000 damages, however, apparently is based upon finding of fact No. 7, which reads in full as follows: "7. That defendants failed to keep the premises clear of mechanics' or materialmen's liens, neither did they contest the same, nor did they satisfy process levied against lessees' interest within ninety days or at all. That plaintiffs have been damaged *in that they had to defend at their own cost and expense numerous actions against liens and process in which defendants here were named therein as defendants.*" (Emphasis supplied.) Such finding patently does not of itself support a judgment for $50,000. If it does, it might as well be said that it supports a judgment on such item for several times that amount. The record does indeed contain much evidence concerning the filing of liens against the premises by reason of labor and materials ordered by the lessees and for whose costs they were responsible. The record further discloses the commencement of suits

to foreclose such liens asserted against the property of the lessors and in which suits the lessors were named as defendants. Restitution of the entire premises benefiting by the work and labor involved in the lien suits was made to the lessors, and this included not only the casino building constructed by them but the theater-restaurant building constructed (subject to certain required completion) by the lessees. It is not indicated either by the court in its findings, conclusions and judgment or in the briefs of the respondents that the lessors were not made completely whole as a result of the judgment. Accordingly, the $50,000 judgment and the finding on which it is based must look for support to evidence as to costs, expenses and attorney fees incurred by the lessors in their defense of the said lien foreclosure suits. As the briefs of the parties made no attempt to deal with this item we had the clerk instruct counsel for respondents to point out any parts of the record supporting any damage by reason of costs and expenses incurred by respondents in defending against the sundry lien foreclosures. Respondents replied by listing the lien foreclosure suits filed, with the expressed conclusion that this "amply supports the sum of $50,000 allowed as damages." Of course, it does nothing of the kind. Appellants properly point out in their response to respondent's letter "that there is no basis for the judgment of $50,000." We are satisfied that the judgment must be modified by striking this item.

Other questions "lurk in the record" which have caused the court some concern but which have not been properly presented for determination. Indeed, by reason of our desire to do justice to the parties and because of the very substantial amounts involved, we have gone to considerable length in attempting to define the issues presented despite obstacles and difficulties growing out of the manner of their presentation. In the first place, appellants' opening brief assigned as error variance between the pleadings and the proof, misjoinder of parties plaintiff, nonjoinder of parties defendant, failure of

the plaintiffs to prove a cause of action because plaintiffs first breached the contract, insufficiency of "substantial completion", and failure of plaintiffs to comply with statutory provisions having to do with unlawful detainer actions. It will have been noted from the foregoing opinion that the court was able to dispose of these assignments without too great difficulty. Appellants' reply brief (some four times as long as their opening brief) raised for the first time the other questions above discussed. We ignored this as well as other failures to comply with our rules and went so far as to request submission of further memoranda as noted above. Orderly appellate procedure demands that at some point we must consider the appeal finally submitted for our decision and we feel that such point has been reached in this case. We do not choose, of our own motion, to add to the assignments of error issues which to us may seem of importance but which counsel have not seen fit to present.

In concluding we find it necessary to define the manner in which our decision affects the judgment. This was in its final effect as follows:

| | |
|---|---:|
| For rental | $100,000 |
| For excess costs of construction | 75,000 |
| For damages for costs of defending lien suits | 50,000 |
| Attorney fee allowed | 10,000 |
| Gross judgment | $235,000 |
| Offset allowed by reason of moneys advanced by defendants | 47,500 |
| Net judgment | $187,500 |
| Modification by this court by deducting item of | 50,000 |
| Net judgment pursuant to our modification | $137,500 |

In order to make the offset effective the trial court

ordered defendants to surrender to plaintiffs the $47,-500 five-year noninterest bearing notes. This order we leave undisturbed. Except as modified above, the judgment and order denying new trial are affirmed. Appellants and respondents shall pay their own respective costs in this court.

MERRILL, C. J., and EATHER, J., concur.

ON PETITION FOR REHEARING

January 29, 1957                    306 P.2d 121

After modification and affirmance of judgment appealed from, a petition for rehearing was filed. The Supreme Court, Per Curiam, held that petition for rehearing should be confined to statement of points upon which right to present argument and authority is sought and that argument upon merits is out of place in such petition; and held that since the thirty-four page petition filed herein was, in substance, a reargument of appeal, rehearing must be denied.

(See 72 Nev. 293, 304 P.2d 395, for opinion on merits.)

*Harry E. Claiborne, of* Las Vegas, and *Alvin Gershenson, of* Chicago, Illinois, for Appellants.

*Morse, Graves & Compton,* of Las Vegas, and *W. Bruce Beckley,* of Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

With increasing frequency counsel seem to be confusing the function of a petition for rehearing with the rehearing itself. In this case a "petition" of 34 pages has been filed by the appellants which, upon patient reading, is discovered to be in substance a reargument of the appeal. For this reason, rehearing is denied.

We deem this an appropriate occasion to point out to the members of the bar that argument upon the merits is out of place in a petition for rehearing. The petition asks leave to argue and should, therefore, confine itself to a statement of the points upon which the right to present argument and authority is sought. See "Rehearing In American Appellate Courts", 44 Cal. Law Review 627. At page 658 of the cited article it is stated (referring to the petition), "It should be brief and it should not be argumentative; it should point to the conflict created [by] or the 'controlling' matter overlooked in the original decision. It should not be expected to also serve the role of persuading the court how the conflict or error should be resolved. That is the object of resubmission. The object of the petition is only to show that the petitioner is entitled to a rehearing, not that he is entitled to a different decision on the merits."