**SHELL OIL COMPANY, Plaintiff-Appellant,**

v.

**Albert ADDESSI et al., Defendants, Appellees.**

**No. 6708.**

United States Court of Appeals First Circuit.

Heard June 7, 1966.

Decided June 27, 1966.

George M. Vetter, Jr., Providence, R. I., with whom Matthew W. Goring and Hinckley, Allen, Salisbury & Parsons, Providence, R. I., were on brief, for appellant.

Adolph N. Anderson, Jr., Providence, R. I., with whom Charles H. Drummey, Providence, R. I., was on brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is a diversity action brought in the district court for the District of Rhode Island for specific enforcement of a Rhode Island contract. Plaintiff, Shell Oil Company, is a Delaware corporation. The defendants, hereinafter the Addessis, husband and wife, are citizens of Rhode Island. In 1954 the parties entered into a fifteen-year lease, on Shell's standard printed form, of a gasoline filling station in Cranston, Rhode Island, Shell being the lessee. However, by a typewritten provision it was stated, "This lease shall be *subject to* that certain agreement between the parties hereto, dated simultaneously herewith, said agreement being hereby incorporated by reference herein." (Ital. suppl.) This agreement provided that "[The Addessis] may, at their option, terminate said lease at any time during the term thereof by giving Shell at least one hundred eighty days notice and paying as consideration therefor * * *." The lease, also by typewritten insertion, contained the following provision:

"9. At any time during the original term of this lease or any extension thereof or any tenancy thereafter, Shell shall have the option to purchase the premises for the sum of * * *."

On November 12, 1964 the Addessis addressed a notice to Shell, stating, *inter alia*, that they *"do hereby give Shell Oil Company notice that we will terminate the lease on May 17, 1965*, said time between November 12, 1964, and May 17, 1965, being more than the 180 days notice required * * *." (Ital. in orig.) On January 19, 1965 Shell duly purported to exercise the option to purchase. The Addessis refused, and this action followed.

Upon the foregoing facts (and certain others which reduced the issues between the parties) sufficiently appearing, Shell sought a summary judgment of specific performance, and the Addessis sought a summary judgment of dismissal. The sole question presented by both motions was whether, by a proper construction of the documents, Shell's option to purchase was in existence after receipt of the notice of November 12, 1964. The district court, stating that

"a notice to terminate effectively terminates the lease when served, not when the lessee must vacate the premises," granted the Addessis' motion. This appeal followed.

We do not agree with the district court. The italicized words in the notice of November 12, supra, stated the legal situation exactly. One hundred eighty days' notice must mean advance notice. The lease did not terminate until May 17, 1965, the date specified in the notice. "If a period of notice is required, the contract remains in force and must continue to be performed according to its terms during the specified period after receipt of the notice of termination." 6 Corbin, Contracts, § 1266 (1962). Cf. Rimnik Corp. v. Wallace, 1938, 61 R.I. 282, 200 A. 765, where the court observed that a notice to quit terminated the tenancy on the date specified to quit. We cannot accept the suggestion that between November 12, 1964 and May 17, 1965, Shell was not a tenant, and that during this period it did not have all of the rights as well as obligations that were provided in the lease. During argument we asked in what ways Shell's relationship as lessee was changed, but the question received no real answer.[1]

Furthermore, the option, by its terms, was exercisable not only during the period of the lease, but also "during * * * any tenancy thereafter." Therefore, if we look at the option alone, it was exercisable during the period between November 12 and May 17 even if the lease should be regarded as ended on November 12. In such event, Shell would at least have continued in lawful occupancy as a tenant of some sort until May 17, making this interval a "tenancy thereafter."

The Addessis contend that even if their notice did not terminate the lease forthwith it nevertheless terminated the option because of the provision that the "lease shall be subject to" the contemporaneous agreement. We, of course, agree with the district court that the words "subject to" mean that the lease was subordinate to, to the extent of being controlled by, the contemporaneous agreement. The agreement, however, does not specifically refer to the option, and nothing in it indicates that the option, unlike all the other rights and obligations in the lease, was intended to be cut off without notice. The Addessis argue that the power to cut off the option as of the date of notice must, nevertheless, be inferred from the agreement, because otherwise the right to terminate contained therein would be a "nullity." We cannot agree either that the stated right to terminate the lease was in reality an absolute right to recover possession, or that the agreement, if not so interpreted, was meaningless. As construed by Shell the termination clause permits shortening the period of the lease, and of the option, precisely to the same extent, i. e., from a period of perhaps years to a period of 180 days. This is not meaningless with respect to either obligation. Rather, it authorizes a substantial acceleration of the date on which Shell must either pay the agreed price for the property, or give it up. It is true that because of the option the termination of the lease will not necessarily revest the property itself in the Addessis, but this is the risk that was inherent once the option was initially granted.

Rather than Shell's construction making the termination clause a nullity, the Addessis' construction would make the option itself all but a nullity, since by the mere giving of the notice it could be unilaterally terminated. In oral argument counsel for the Addessis appropriately stated their position. "We do

1. The Addessis did cite the case of Estfan v. Hawks, 1949, 166 Kan. 712, 204 P.2d 780, 10 A.L.R.2d 877, where the court stated in a somewhat similar situation that the lease terminated upon receipt of notice. The court supplied neither authority nor reasoning. We think the reasoning is all the other way. The Addessis would have been the first to say so, had Shell not paid the rent. Estfan is in any event distinguishable because of the presence of a clause in the instant option that we are about to refer to.

not concede that a valid option existed here, because it could always have been cut off." This would be an extreme result. We are unwilling to say that a clause which provides, simply, that the lease may be terminated on 180 days notice, means that the option, not even referred to, was terminable instanter.

 No Rhode Island case indicates a contrary result. In such circumstances we assume that the Rhode Island court would give to language what we regard to be its proper meaning.

Judgment will be entered vacating the judgments of the District Court and remanding the action with directions to enter summary judgment for the plaintiff.