AMERICAN FENCE, INC., A Nevada Corporation, ROBERT V. STEUTEVILLE, AND JACK MATTHEWS & CO., Realtors, A Nevada Corporation, Appellants, v. HARRY P. WHAM AND EDWIN DOTSON, AND ANTOINETTE WHAM, Respondents.

No. 10580

November 30, 1979 603 P.2d 274

---

[1]The Governor, pursuant to Nev. Const. art. 6, § 4, designated the Honorable John E. Gabrielli, Judge of the Second Judicial District, to sit in place of THE HONORABLE CAMERON M. BATJER, who was disqualified.

*Clark & Zubel,* Las Vegas, for Appellants.

*Edwin J. Dotson,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

In this action, appellants American Fence, Inc. and its president, Robert V. Steuteville, seek specific performance of an option to purchase real estate. The option had been granted in connection with a lease of the property to American Fence by respondents. Appellant Jack Matthews & Co. seeks recovery of a broker's commission allegedly due on the purchase price. After cross motions for summary judgment, the district court concluded that the option had been extinguished by the termination of the lease and, as a consequence, granted summary judgment for respondents. This appeal followed; we affirm.

In January, 1975, appellant American Fence, Inc., through

its president, appellant Steuteville, entered into a series of agreements with respondents Harry P. Wham, Antoinette Wham, and Edwin Dotson, relating to a piece of commercial real property in Las Vegas known as "Whamco Divers." On January 17, an Offer and Acceptance Agreement was executed for what was described as a "Lease/Option to Purchase" the subject property. The agreement specified the amount of the rent, the term the lease was to run (one year "unless Option exercised as specified herein"), and the exchange of earnest money, representing first and last months' rent plus $600 "option money". Three days later the parties executed a lease of the property, which included in the payment provisions a section entitled "Lease/Option to Purchase", acknowledging the payment of first and last months' rent in advance "plus $600.00 option money, the latter being non-refundable to Lessee/ Buyer if Option to Purchase is not exercised per Offer and Acceptance Agreement attached . . . Lessee/Buyer to exercise Option to Purchase . . . at any time from commencement to termination of term specified therein." The lease also granted the lessors the right to terminate the lease in the event that a sublease was entered into without the prior consent of the lessors, and to re-enter and terminate the lease in the event of any breach. On January 27, the parties opened an escrow account and executed escrow instructions, again referring to the "Lease/Option to Purchase". Appellants took possession on or about January 27, and the term of the lease began on February 1, 1975.

On September 10, 1975, Dotson mailed a "Notice of Termination of Lease" to American Fence, reciting various breaches of the lease (including unauthorized subletting), declaring the lease terminated, and giving American Fence until September 30, 1975, to remove its personal property from the premises. The names of the three co-lessors were typed on the notice, but it was signed only "by" Edwin J. Dotson. On September 30, the appellants delivered to Dotson (and addressed to the three co-lessors) a letter purporting to exercise the option to purchase the property; Dotson replied the same day with a mailgram stating that the option was no longer available because the lease had been terminated.

The lessors then filed an unlawful detainer action and obtained a writ of restitution, which was ultimately set aside by this court in American Fence, Inc. v. Wham, 93 Nev. 26, 559 P.2d 824 (1977). There we held that the summary procedure for obtaining the writ was not available since the record did not

show affirmatively the authority of Dotson to act for his co-lessors in giving the notice of termination. This showing is a jurisdictional prerequisite to the granting of the writ in an unlawful detainer action.

In March, 1976, appellants commenced this action for specific performance of the option, alleging the performance of "all the covenants and conditions, regarding the purchase of the Subject Property." Respondent Wham, now the sole owner of the property, answered, traversing the allegation of performance, incorporating the recital of the breaches of the lease in the "Notice of Termination", and asserting the termination of the lease as a defense. Cross motions for summary judgment were made. The district court granted respondents' motion and denied that of appellants.

Appellants contend that our decision in American Fence, Inc. v. Wham, *supra,* is conclusive on the issue of Dotson's authority to give notice of the termination of the lease. This argument is meritless. We held in that case only that the statutory requirements for obtaining the summary writ of restitution had not been complied with, and we specifically noted that the issue of the enforceability of the option was not before us. 93 Nev. at 27 n. 2, 559 P.2d at 825. The unlawful detainer action is entirely a creation of statute, *see* Yori v. Phenix, 38 Nev. 277, 149 P. 180 (1915); NRS 40.250, and compliance with the requirements of the statute is necessary to the maintenance of the action. Gasser v. Jet Craft Ltd., 87 Nev. 376, 380, 487 P.2d 346, 348 (1971).

By contrast, the present action for specific performance is equitable in nature. In such a case, the district court, acting as a court of equity, looks less to technical distinctions than to broad principles of justice. Schroeder v. Gemeinder, 10 Nev. 355, 368 (1875). Specifically, the district court could look to the substance of the notice rather than to the statutory requirements for notice in an unlawful detainer action, especially when the agreement between the parties did not require the statutory form of notice to terminate the lease. Sandra Frocks v. Ziff, 74 N.E.2d 699 (Ill. 1947); *cf.* McNally v. Leach, 205 S.W. 82 (Mo.App. 1918) (defective notice from one co-lessor who did not purport to act for others). The district court had before it the instruments executed by the parties, the notice of termination, and affidavits from Wham supporting Dotson's

authority to act for his co-lessors in sending the notice.[1] Appellants, apparently believing that we had settled the issue of termination, did not dispute Dotson's authority to give notice to quit, nor did they assert that the notice was defective in any other way. The issues before the district court were therefore purely issues of law, proper for resolution on a motion for summary judgment, NRCP 56; Short v. Hotel Riviera, Inc., 79 Nev. 94, 103, 378 P.2d 979, 984 (1963), as to the validity of the notice and its effect on the option. We find no error in the district court's conclusion, implied in the granting of respondents' motion (no conclusions of law were filed, NRCP 52(a)), that the notice of September 10, 1975, terminated the lease. Even on the standard applicable to motions for summary judgment, that is, indulging all inferences favorable to the party moved against, Lipshie v. Tracy Investment Co., 93 Nev. 370, 375, 566 P.2d 819, 822 (1977), we are convinced that no genuine issue of fact relating to the termination remained to be tried. We turn, then, to the legal effect of that termination.

We note first that this is not a case in which the notice to quit was so equivocal, see Tseka v. Scher, 65 A.2d 169 (Conn. 1949); Mitchell v. Wayave, 40 S.E.2d 284 (Va. 1946), that appellants were lulled into assuming that the lease was still in effect. Neither is it asserted that respondents waived their right to terminate the lease by accepting rent after notice of the breaches, see Summa Corp. v. Richardson, 93 Nev. 228, 234, 564 P.2d 181, 185 (1977), nor that the breaches were so technical or remediable that it would be inequitable to enforce the termination, Thompson v. Coe, 115 A. 219 (Conn. 1921) (loss of rent in mail with immediate offer to cure was so technical a breach that forfeiture of option would be inequitable). By pleading only that the terms regarding the sale of the property had been complied with, appellants have not properly asserted that the lease was still in force when the attempt to exercise the option was made. Rademacher v. Rademacher, 178 P.2d 973, 982 (Wash. 1947).

 █

Instead, appellants assert that the option and the lease were separate contracts which ought to be severed and enforced independently. Our reading of the instruments executed by the

---

[1] We observe that the exhibits attached to the motions for summary judgment made by both parties were only sporadically the "[s]worn or certified copies" required by NRCP 56(e). Although we do not condone such deviation from procedural requirements, since the point was not raised by either party and no prejudice appears, NRCP 61 (because both parties submitted substantially the same exhibits), we shall not address the question.

parties indicates that this is not the case. All three documents, the Offer and Acceptance, the lease, and the escrow instructions, refer to the "Lease/Option to Purchase" as parts of a single transaction, and all recite the same terms. Looking to the function of the agreements rather than merely to their form, Sandra Frocks v. Ziff, 74 N.E.2d at 703, we conclude that the lease and option were meant to stand or fall together.

Appellants argue that the recital of a separate consideration for the option requires that it be enforced without regard to the lease. They cite Gershenhorn v. Stutz, 72 Nev. 293, 304 P.2d 395 (1956); in which we noted, while refusing to enforce an option, that both option and lease "rested upon a common and indivisible consideration." 72 Nev. at 303, 304 P.2d at 400. This point is not determinative; rather, we must look to whether each agreement forms a complete contract alone. *See* Mathews Slate Co. v. New Empire Slate Co., 122 F. 972, 979 (C.C.N.D.N.Y. 1903). In *Gershenhorn,* the option could not be a separate contract because the element of consideration was lacking; here, while the consideration is present for the option, the term it was to remain open is supplied by the lease. Therefore, whether we view the agreement as two separate contracts, in which the term of the option is dictated by the term of the lease, or as one contract, the termination of the lease effectively terminated the option as well.

This case does not present a situation in which an attempt to terminate the lease is made after the lessee has exercised the option. Ruark v. Peterson, 491 P.2d 75 (Colo.App. 1971); Murfee v. Porter, 214 P.2d 543 (Cal.App. 1950). Here, we have an attempt to exercise an option after notice has been received that the lease was terminated as permitted by the terms of the lease. Were we to hold that such an exercise is valid, it would be difficult to imagine how any covenant in such a lease could be enforced, or a reserved power of termination exercised: the lessee would always have the freedom to violate the conditions of the lease with the assurance that, if the power of termination were ever invoked, exercise of the option would still be possible. Sandra Frocks v. Ziff, 74 N.E.2d at 704; Thompson v. Coe, 115 A. at 221.

We note that the summary judgment on the issue of the survival of the option disposes of the causes of action of appellant Matthews, which are predicated on the existence of a valid contract of sale.

The judgment of the district court is affirmed.